The STATE of Utah, Plaintiff and Respondent,

v.

Michael Anthony DePLONTY, Defendant and Appellant.

No. 20455.

Supreme Court of Utah.

Dec. 31, 1987.

Rehearing Denied Feb. 5, 1988.

David L. Wilkinson, Stephen Mikita, Salt Lake City, for plaintiff and respondent.

Nancy Bergeson, Salt Lake City, for defendant and appellant.

STEWART, Associate Chief Justice:

The defendant, Michael Anthony DePlonty, was convicted of aggravated sexual assault and aggravated kidnapping, both first degree felonies, in violation of Utah Code Ann. §§ 76-5-405 & 76-5-302 (1978). For the conviction of aggravated sexual assault, the trial judge sentenced the defendant to an indeterminate term of ten years to life imprisonment in the Utah state prison, with the minimum term being mandatory. The defendant was not sentenced on the aggravated kidnapping conviction because the trial judge concluded that both crimes were part of a single criminal episode. On appeal, DePlonty challenges (1) the sufficiency of the evidence to support the conviction for aggravated sexual assault, (2) the trial court's refusal to find him guilty and mentally ill or, alternatively, to sentence him to the state mental hospital, and (3) the constitutionality of his ten-year minimum mandatory sentence. We affirm the defendant's conviction but conclude that the defendant should have been found guilty and mentally ill and remand to the trial court for sentencing pursuant to Utah Code Ann. § 77-35-21.5 (Supp.1987).

### I.

On April 14, 1984, the victim, a nine-year-old girl, and her father, her father's girlfriend, and the girlfriend's daughter went to Tanner Park in Salt Lake City, Utah. The victim became separated from the group in the Parley's Gulch area and while there encountered a man walking down the road whom she later identified as the defendant. At trial, she testified that the defendant ran after her, knocked her down, undressed her, and dragged her about five feet through the sagebrush. He asked her how old she was, who she was, and with whom she came and then had sexual intercourse with her for about twenty minutes. The victim described the man as "smelling like paint" and "mumbling." She said he tried to kiss her several times. When he finished assaulting her, he told her to count to twenty-five and not to peek or he would come back and kill her. He then left, and she summoned help.

Richard Bethers of Salt Lake Search and Rescue heard cries of help coming from the area several hours after the assault occurred. He found and detained DePlonty, who seemed to be disoriented and was slurring his words. Bethers believed that DePlonty had been drinking or was on drugs. Detective Cazier then took custody of DePlonty. He noted that there were scratches on DePlonty's arm and, after a conversation with him, decided to arrest him. Before taking DePlonty's statement, the detective summoned a pastor, David Stewart, to talk to DePlonty. Stewart testified that during their conversation DePlonty was still disoriented.

DePlonty told both Stewart and Detective Cazier that he had inhaled toluene, the ingredient in paint that causes intoxication.

He stated that he had no real memory of anything after he inhaled fumes from several cans of paint, and he described a feeling of evil spirits coming over him. He also recalled a hallucinatory image of kissing an old girlfriend. He could not deny that he had sexually assaulted the victim, but did not remember doing so.

At trial, Dr. Phillip Black testified about the victim's physical condition. He stated that scratches and bruises on her body were consistent with the claim that she was dragged through bushes and that his physical examination of her disclosed some swelling of the hymen, as well as three small submucosal hemorrhages just inside the vaginal opening.

Prior to trial, the defendant gave notice of his intent to rely on the defense of diminished mental capacity, and the trial court appointed two mental health experts to examine the defendant. Dr. Breck Lebegue performed a psychological evaluation of the defendant. He testified that the toxic chemical toluene is contained in some brands of spray paint and that inhaling it produces a delirium, or change of mental state, that usually has a sudden onset and a short duration. He also testified that the defendant's prolonged use of toluene over a period of fourteen years had produced a form of dementia in the nature of a premature senility and mixed organic brain syndrome. The combined effects of organic brain damage and delirium could alter a person's perception and produce hallucinations. Loss of memory is also a common result of severe toluene intoxication.

Dr. Lebegue testified that any decrease in the defendant's cognitive abilities caused by the toluene would not affect his volitional capacity to intend to have sexual intercourse. Although the use of toluene could have affected DePlonty's awareness of the victim's age and lack of consent, his cognitive powers and awareness were sufficient for him to have known that he was assaulting a woman, and not a man or an animal. According to Dr. Lebegue, the defendant might have thought that the victim was his old girlfriend, but if so, he would have thought he was raping his old girlfriend.

Finally, Dr. Lebegue concluded that the defendant had sufficient capacity at the time of the assault to form the requisite mental intent to commit rape and that, if guilty, the defendant should be found guilty and mentally ill and committed to a hospital for treatment. *See* Utah Code Ann. § 77–35–21.5.

After conviction, the defendant moved to amend the judgment to guilty and mentally ill, pursuant to Utah Code Ann. § 77–35–21.5. The trial judge ruled that the evidence did not prove that the defendant was mentally ill. At the sentencing hearing the trial judge found that neither mitigating nor aggravating factors preponderated and therefore imposed the presumptive minimum mandatory term of ten years in the Utah state prison for aggravated sexual assault.

## II.

The defendant attacks his conviction for aggravated sexual assault on the ground that the State did not prove an element of the crime charged, i.e., that the defendant knew the victim was not his wife. Utah Code Ann. § 76–5–402(1) (Supp.1987) states: "A person commits rape when the actor has sexual intercourse with another person not the actor's spouse without the victim's consent." The crime of aggravated sexual assault, § 76–5–405, includes the crime of rape plus additional elements not at issue here. In response to defense counsel's objection that the State did not prove that DePlonty knew the victim was not his wife, the trial judge stated, "[T]he [nonspouse] element is not involved here." That comment can only be taken to mean that it was obvious to the defendant from the undisputed evidence that the victim, a little girl who was a stranger to the defendant, was not his wife. The State must always prove each and every element of a crime beyond a reasonable doubt. *State v. Green*, 78 Utah 580, 590, 6 P.2d 177, 181 (1931).

One element of the crime of aggravated sexual assault is that the victim cannot be the perpetrator's wife. The defendant asserts that (1) the trial judge erred by not requiring proof that the defendant intended

to have intercourse with one not his spouse and that he knew she was not his wife, or (2) if there is such proof, the State did not prove the nonspouse element beyond a reasonable doubt. The defendant refers in this respect to the trial judge's comment that the defendant "may not have known his victim, he may have had some question as to a delusion or an illusion, but he intended to do what he [did] with whom he did it, although he did not know who it was."

The defendant argues that dictum in *State v. Elton*, 680 P.2d 727, 729 (Utah 1984), established that to convict a defendant of rape, the State must prove that the defendant intentionally or knowingly had intercourse with a person other than his wife. In *Elton*, the defendant challenged his conviction for unlawful sexual intercourse (i.e., statutory rape) on the ground that he had acted under a mistake of fact as to the woman's age. The unlawful sexual intercourse statute at issue in *Elton* set forth the elements of that crime as "(1) an act of sexual intercourse, (2) with a person who is not the defendant's spouse, (3) who is under sixteen years of age." 680 P.2d at 729. The statute did not specify the criminal state of mind required for each element of the offense. The Court held that to convict a defendant of having unlawful sexual intercourse with a person under sixteen years of age who is not the defendant's spouse, the prosecution must prove that the defendant was at least criminally negligent as to the third element, the age of the partner.

In the course of the opinion, the Court stated:

Clearly the requisite culpable mental state as to the first and second elements of the offense is established by showing that defendant intentionally engaged in sexual intercourse with a female not his wife.

680 P.2d at 729. DePlonty argues that the nonspouse element of the unlawful sexual intercourse statute is the same as the nonspouse element of rape and aggravated sexual assault and that the language in *Elton* establishes the requisite criminal state of

mind as to that element. Although the language relied on by the defendant arguably supports the conclusion that intent or knowledge must be proved as to the nonspouse element, the Court in *Elton* did not address that issue. Furthermore, the policy considerations relied on in *Elton* do not apply to the nonspouse element in this case. We believe that the nonspouse element of the crime of aggravated sexual assault is an objective element, and not dependent on the defendant's state of mind. Indeed, this Court has allowed the nonspouse element to be proved solely by evidence that a defendant and a victim could not have been married. *See State v. Calamity*, 735 P.2d 39, 42 (Utah 1987); *State v. Housekeeper*, 588 P.2d 139, 140 (Utah 1978).

In the instant case, there is ample evidence that the victim was not the defendant's spouse. The defendant asked the victim at the time of the assault who she was, how old she was, and with whom she had come to that area. These questions constitute circumstantial evidence that she was a stranger to the defendant, and not his wife. More compelling than that evidence were the defendant's statements to Dr. Lebegue that he has had normal heterosexual relationships with several girlfriends "but has never married." Accordingly, the nonspouse element of the crime was clearly proved.

### III.

The defendant also attacks the trial judge's refusal to find him mentally ill under Utah Code Ann. § 77-16-1 (1982) and to a sentence him as guilty and mentally ill under Utah Code Ann. § 77-35-21.5 (Supp. 1987).

The defendant asserts that the trial judge should have found him guilty and mentally ill based on the defendant's evidence of mental illness which was adduced in support of his defense of diminished capacity. Indeed, the trial judge did not give full force and effect to the purpose and requirements of the Utah Insanity De-

fense Act (the Act).[1]

▮ Section 77–16–1 provides that if a defendant is convicted of rape or aggravated sexual assault, *inter alia,* and it appears to the trial court that the defendant "may be suffering from any form of mental disease or defect which may have substantially contributed to the commission of the offense, the court shall order a mental examination of that person." [2] This section imposes a mandatory obligation on a trial judge to order a mental examination if there is evidence that the defendant suffered from a "mental disease or defect" which may have "substantially contributed" to the crime. In the present case, however, the defendant had already been given a mental examination by two court-appointed mental health experts, as required by Utah Code Ann. § 77–14–4 (Supp. 1987), pursuant to the defendant's assertion of the defense of diminished capacity. Consequently, no additional mental examination was necessary.

1. The Act was passed in 1983. 1983 Utah Laws, ch. 49, § 1, at 263 (codified at Utah Code Ann. § 76–2–305 and scattered sections of title 77 (Supp.1983)).

2. Section 77–16–1 states in full:
   Whenever any person is convicted of or pleads guilty to rape, forcible sodomy, forcible sexual abuse, aggravated sexual assault, aggravated kidnapping, aggravated assault, mayhem, or an attempt to commit any of the foregoing crimes, and when it appears to the court either upon its own observation or upon evidence otherwise presented, that the defendant may be suffering from any form of mental disease or defect which may have substantially contributed to the commission of the offense, the court shall order a mental examination of that person.

3. The Act added two kinds of pleas to an indictment or information: (1) not guilty by reason of insanity and (2) guilty and mentally ill. *See* Utah Code Ann. § 77–13–1 (Supp.1987). The Act specifically instructs the trial court how such pleas are to be evaluated. If a defendant pleads not guilty by reason of insanity, he is required to give notice to the prosecutor, Utah Code Ann. § 77–14–3 (Supp.1987), and undergo an investigation by two court-appointed mental health examiners. *Id.* § 77–14–4.
   Furthermore, § 77–35–21.5(2), which was also added by the Act, provides that when a defendant raises a defense of not guilty by reason of insanity, the trier of fact has a number of options as to the kind of verdict it may return.

Prior to adoption of the Utah Insanity Defense Act in 1983, the insanity defense in Utah was patterned after the ALI Model Penal Code and read:

In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

Utah Code Ann. § 76–2–305 (1978) (repealed 1983). Under that law, if a defendant asserted the defense of insanity and was acquitted on the ground that he met the criteria set forth in the statute at the time of the offense, the appropriate verdict was not guilty by reason of mental illness. Utah Code Ann. § 77–35–21 (1978) (repealed 1980).

The concept of guilty and mentally ill was introduced as a part of the Act in 1983,[3] *see Utah Legislative Survey—1983,*

The verdict may be "guilty, not guilty, not guilty by reason of insanity, guilty and mentally ill, guilty of a lesser offense, or guilty of a lesser offense due to mental illness but not an illness which would warrant full exoneration." *Id.*
   Section 77–35–21.5(1) provides that if a defendant pleads guilty and mentally ill, the court must hold a hearing within a reasonable time to evaluate whether the defendant is mentally ill. In addition, the trial court must advise the defendant that the guilty and mentally ill plea is a plea of guilty and not a contingent plea. If after examination, the trial court finds the defendant not mentally ill, the defendant is sentenced as any other offender. If, however, the court finds the defendant mentally ill, he must be sentenced as a mentally ill offender as provided by the Act. Utah Code Ann. § 77–35–21.5(1).
   The Act also recognizes the defense of diminished capacity, *see* Utah Code Ann. § 77–14–3(1) (Supp.1987), but does not define the term. The statutory term must be deemed to incorporate the common law definition. *See State v. Sessions,* 645 P.2d 643, 644 (Utah 1982). Insanity and diminished capacity are both forms of the mental illness defense provided in § 76–2–305.
   Although the defense of diminished capacity is clearly incorporated within the Insanity Defense Act, no guidance is provided by the Act concerning how the defense is to be considered by a trier of fact. The diminished capacity defense, although applicable only to specific intent crimes, has a similar effect to a defense of not guilty by reason of insanity, because, if proven, both establish that a defendant lacked

**626**

1984 Utah L.Rev. 115, 152 n. 235 (1984), and is designed to deal with instances in which the defendant is mentally ill, yet not so ill that he did not possess the requisite mental state to commit the crime charged.[4] A judgment of guilty and mentally ill does not serve to exonerate or excuse the defendant; rather, the offender found guilty and mentally ill is held accountable for his criminal conduct, yet because of his mental illness, may need specialized treatment. Upon a judgment of guilty and mentally ill, the court must conduct a hearing to determine the defendant's current mental state. Utah Code Ann. § 77–35–21.5(3) (Supp. 1987). Hospitalization is required if the court finds by clear and convincing evidence that the defendant has a mental illness; that the defendant poses immediate physical danger to himself or others or is incapable of providing the necessities of life, so that correctional or probationary disposition would be improper; that the defendant is incapable of rationally weighing the costs and benefits of treatment; that hospitalization is the only appropriate alternative for the defendant; and that hospitalization will meet the defendant's conditions and needs. *Id.* § 77–35–21.5(4). A defendant who meets these standards should either be hospitalized, *id.*, or if the court finds that probation would be appropriate, the defendant should be placed on probation with the condition that he continue treatment. *Id.* § 77–35–21.5(9). To assure that the statutory scheme is properly effectuated, the trial judge should make complete findings of fact and conclusions of law at the conclusion of the hearing.

■ In the instant case, the defendant raised the defense of diminished capacity, provided the prosecutor with 30 days' notice, and submitted to examination by two court-appointed mental health examiners, as required by Utah Code Ann. §§ 77–14–3

& 77–14–4. Both examiners returned reports concluding that the defendant was mentally ill. Dr. Lebegue stated that

the defendant presently, and at the commission of the offense, is and was mentally ill, suffering from inhalant induced (paint) dementia (premature senility), and a mixed organic brain syndrome, with memory, mood, and personality changes caused by chronic paint sniffing. These symptoms of brain damage appear to be chronic and largely irreversible.

Dr. Lebegue also stated that "even though [the defendant] suffered from the chronic organic brain damage at the time of his crime, this mental state alone did not, in my opinion, negate his capacity to intentionally and knowingly enact in detaining, transporting, and assaulting the victim." Dr. Mark Rindflesh also concluded that the defendant had a mental illness. No evidence was presented at trial to rebut the evidence that the defendant was mentally ill.

Although the trial judge stated that "[t]he Court heard all of the evidence, and all of the facts, and under the evidence I heard in this case, I cannot find him mentally ill under any statute," the judge had previously stated:

I would find that [the defendant] has diminished mental capacity to some extent, generally. But not enough to be the sort of diminished mental capacity to—that he didn't have the intent to commit the act.

In other words, the doctor's report that he has suffered some organic brain damage, yes, that's in the record, and I could not dispute that. But as to what it did, I find it has not—did not and was not responsible, did not remove from him the ability to intentionally perform the act of rape.

---

the *mens rea* required by a particular crime. Accordingly, when a defendant raises such a defense, the trier of fact may appropriately return any of the verdicts enumerated in § 77–35–21.5 in connection with a defense of not guilty by reason of insanity.

**4.** Mental illness is defined as follows: " 'Mental illness' means a mental disease or defect. A

mental defect may be a congenital condition or one the result of injury or a residual effect of a physical or mental disease." Utah Code Ann. § 76–2–305(4) (Supp.1987). Any mental condition meeting that definition may be introduced by the defendant to show that he lacked the requisite *mens rea* to commit the crime charged.

In light of the judge's statements that the defendant suffered from diminished mental capacity and that he did not dispute the doctor's reports that the defendant suffered from brain damage, the judge's refusal to find the defendant mentally ill was error.

■ Furthermore, the trial court's interpretation of the Insanity Defense Act was incorrect. As defined by the Act, a defendant can be found mentally ill even though his mental illness does not entirely negate the *mens rea* of the crime charged. A defendant who suffers from a mental disease or defect and, therefore is mentally ill as defined by Utah Code Ann. § 76-2-305 and is found to possess the state of mind necessary to commit the crime charged, despite his illness, should be found guilty and mentally ill as provided by the Act.

■■ The trial judge's refusal to find the defendant mentally ill in spite of uncontroverted evidence seems to have been based on the mistaken assumption that even if the defendant was mentally ill, it was the prerogative of the Board of Corrections to order appropriate mental health treatment once the defendant was in the state prison. The judge was also concerned that a finding of mental illness would somehow affect the duration of the defendant's sentence.[5] Neither assumption is correct under the Act. Uncontroverted evidence of a defendant's mental illness in connection with a finding of guilty requires a trial judge, pursuant to § 77-35-21.5(4), to then determine the appropriate disposition of the defendant, whether it be to prison or to the state hospital. The judge

should not relinquish the responsibility to make that determination to the Board of Corrections. We also note that committing a defendant who is guilty and mentally ill to the state mental hospital does not interrupt or extend the length of the defendant's sentence: "The period of commitment to the Utah State Hospital or other suitable facility, as provided for in this section, may in no circumstance be longer than the the the maximum sentence imposed by the court." Utah Code Ann. § 77-35-21.5(7). In fact, a defendant who is found guilty and mentally ill should be given a sentence of the same duration as any other defendant convicted of the same offense. *Id.* § 77-35-21.5(3).

On appeal, we do not disturb the conclusions of the trier of fact unless they are clearly erroneous. Utah R.Civ.P. 52(a) (1987). However, in light of the undisputed conclusions of both court-appointed mental health examiners and the lack of any other contradictory evidence, the trial judge's refusal to find the defendant mentally ill constitutes clear error. Accordingly, the trial judge should have entered a judgment of guilty and mentally ill.

But that does not mean that the defendant should necessarily be committed to the state hospital. It only means that the defendant is entitled to a hearing to determine whether he should be committed to the state mental hospital under the standards set out in § 77-35-21.5(4). At that hearing, the defendant must prove by clear and convincing evidence that treatment at the mental hospital would be appropriate. The trial judge's decision to order special therapeutic sentencing should be based on

---

5. In denying the defendant's motion to amend the verdict, the judge stated:

   THE COURT: ... I heard the testimony of the psychiatrist, I am familiar with the statute, and I do not believe that the statute in any way—I think once an individual is in the Utah State Prison, that hospitalization as a part of the prison program is included as part of the sentence.

   It says hospitalization is not part of the sentence, but once one is committed to prison and is hospitalized as a prisoner, they are in prison serving time....

   ... [T]he Board of Pardons—the Board of Corrections, I should say, has access, better access, and better rights to treatment that can

   be done otherwise than can possibly be handled. The only other alternative would be a confinement under the state statutes to the Utah State Hospital and stay execution of sentence. And I have reasons why I do not believe that that should be done, the reasons being I think it can be done under the sentence as provided by law, and that that hospitalization is not the hospitalization in the statute.

   That's not the reason, but I think once they're committed to the custody of the Board of Corrections and the warden of the Utah State Prison, that when they are in custody, that's time served.

the criteria set out in § 76–35–21.5(4) and should be supported by complete, accurate, and consistent written findings of fact. *See generally, Rucker v. Dalton,* 598 P.2d 1336, 1338 (Utah 1979). *See also Milne Truck Lines v. Public Service Comm'n,* 720 P.2d 1373, 1378 (Utah 1986); *Mountain States Legal Foundation v. Utah Public Service Comm'n,* 636 P.2d 1047, 1058 (Utah 1981).

### IV.

Finally, the defendant attacks the constitutionality of the minimum mandatory sentencing scheme and the imposition of a ten-year minimum mandatory sentence. For the reasons stated in *State v. Bishop,* 717 P.2d 261 (Utah 1986), and *State v. Egbert,* 748 P.2d 558 (Utah 1987), the ten-year minimum mandatory term is affirmed.

Affirmed in part, reversed in part and remanded for a hearing under § 77–35–21.5 and for resentencing in accordance with this opinion.

HALL, C.J., and HOWE, DURHAM and ZIMMERMAN, JJ., concur.