2005 UT 61

**Carolyn Roberts MANNING, Petitioner,**

v.

**STATE of Utah, Respondent.**

**No. 20040453.**

Supreme Court of Utah.

Sept. 23, 2005.

Mark L. Shurtleff, Att'y Gen., Laura Dupaix, Asst. Att'y Gen., Salt Lake City, for petitioner.

Joan C. Watt, Salt Lake City, for respondent.

DURHAM, Chief Justice:

¶ 1 In this case, the petitioner seeks review of the court of appeals' decision that (1) a criminal defendant claiming denial of the right to appeal must file a separate civil action for relief pursuant to rule 65C of the Utah Rules of Civil Procedure and the Post–Conviction Remedies Act, and (2) the State is not required to prove a knowing and voluntary waiver of the right to appeal before a court may determine that the right to appeal has not been unconstitutionally denied. We conclude that, in light of revisions to the Utah Rules of Civil Procedure, a criminal defendant claiming denial of the right to appeal must file a motion in the trial court for reinstatement of a denied right to appeal under the exceptions outlined in this case, rather than under rule 65C and the Post–Conviction Remedies Act. We further hold that criminal defendants who fail to file a notice of appeal within the required time period are presumed to have knowingly and voluntarily waived this right and thus have the burden to prove otherwise by establishing that one of the exceptions defined in this case applies.

## BACKGROUND

¶ 2 On July 12, 2001, pursuant to a plea agreement in which additional charges against her were dropped, the petitioner, Carolyn Manning, pled guilty to one count of failure to render a proper tax return, a third degree felony; one count of unlawful dealing of property by a fiduciary, a second degree felony; and one count of third degree felony theft.

¶ 3 Manning's written plea agreement explicitly waived various rights otherwise accorded to criminal defendants, expressed understanding that her unconditional guilty plea would "not preserv[e] any issue for appeal relative to the Court's rulings on pretrial motions or based upon statutory or constitutional challenges," and acknowledged that "by pleading guilty/no contest I am waiving my rights to file an appeal." The plea agreement also acknowledged the thirty-day time limit set by Utah Code section 77–13–6(2)(a) for moving to withdraw a guilty plea and recognized that the court would grant such a motion only upon "a showing of good cause."

¶ 4 At Manning's plea hearing, the court reviewed her "right to appeal a conviction" should she proceed to trial and ensured that Manning understood that, by contrast, her "right to appeal these pleas of guilty is very limited." After a thorough colloquy in which the court determined that Manning was "fully competent" to participate in the proceedings, that her attorney had "taken the time to extend himself to adequately and properly serve [her], and [that she was] satisfied with his service," and that Manning understood both the charges and the consequences of her guilty pleas and was entering her guilty plea "of [her] own free will," the court accepted her pleas and informed her that she could move to withdraw them within thirty days.[1]

¶ 5 Manning was sentenced on September 27, 2001. Fifty-seven days later, while in custody, Manning filed a pro se notice of appeal. The district court dismissed this

---

1. At the time, *State v. Ostler*, 2001 UT 68, ¶ 11, 31 P.3d 528, which held that the thirty-day time period for withdrawing a guilty plea runs not from the entry of the plea, but from "the date of final disposition of the case at the district court had not yet issued."

notice of appeal as untimely under rule 4(a) of the Utah Rules of Appellate Procedure.

¶ 6 On July 31, 2002, Manning petitioned the district court for an extraordinary writ that would "allow[ ] her to be [re]sentenced nunc pro tunc[,] thereby extending the time in which to file a notice of appeal, pursuant to rule 65B(b) and/or 65C of the Utah Rules of Civil Procedure." As the basis for this request, Manning claimed that her attorney "did not inform her that she could file a notice of appeal within 30 days of entry of judgment," and that, as a result, her "right to appeal under Article I, section 12 of the Utah Constitution [had] been violated."

¶ 7 After a hearing on September 27, 2002, the district court denied Manning's petition, finding that Manning "was represented by very competent counsel," "was informed by the court of her limited right to appeal," and had "not established that she was unconstitutionally denied her right to appeal." The court concluded that Manning had been sufficiently notified of her limited right to appeal, but had "failed to timely exercise [that] right" and was "therefore bound by her own failure to exercise her right to appeal."

¶ 8 Manning challenged the district court's denial of her petition in the court of appeals, arguing that her failure to timely appeal did not constitute a knowing and voluntarily waiver of her right to appeal. *Manning v. State*, 2004 UT App 87, ¶ 23, 89 P.3d 196. Affirming the district court, the court of appeals ventured "to clarify the correct procedural approach" in cases "where resentencing to resurrect the right to appeal is the objective." *Id.* ¶ 12. It concluded that the proper procedure was to apply for relief under rule 65C, which it considered the successor to rule 65B(i) of the Utah Rules of Civil Procedure, pursuant to which we had previously directed defendants claiming denial of the right to appeal to file their petitions. *Id.* ¶¶ 10, 13 (citing *State v. Johnson*, 635 P.2d 36, 38 (Utah 1981)). The court also concluded that Manning was not eligible for relief under *Johnson*, rejecting her argument that the State bore the burden of proving that her failure to timely appeal constituted a "knowing and voluntary waiver" of the right to appeal. *Id.* at ¶¶ 23, 25. Rather, the court

held that a defendant who claims that her right to appeal has been unconstitutionally "denied" must show that her failure to exercise that right was the result of interference that "originate[d] in the criminal justice system" and was not simply the result of missing the deadline for bringing an appeal. *Id.* ¶ 25.

¶ 9 We granted certiorari to consider (1) whether a criminal defendant who seeks resentencing to revive the right to appeal pursuant to *State v. Johnson*, 635 P.2d 36 (Utah 1981), must file a separate civil action pursuant to rule 65C rather than requesting relief from the sentencing court in the underlying criminal case and (2) whether a defendant's request for resentencing must be granted unless the record demonstrates that the defendant knowingly and voluntarily waived her right to appeal, and, if so, whether Manning knowingly and voluntarily waived her right to appeal in this case.

## STANDARD OF REVIEW

¶ 10 On certiorari, we review the decision of the court of appeals for correctness, without deference to its conclusions of law. *In re A.T.*, 2001 UT 82, ¶ 5, 34 P.3d 228. The underlying issue of the district court's denial of Manning's petition for postconviction relief is a legal issue reviewed for correctness. *Myers v. State*, 2004 UT 31, ¶ 9, 94 P.3d 211.

## ANALYSIS

¶ 11 The first issue presented on certiorari requires us to address whether the procedure previously laid out by this court in *State v. Johnson*, 635 P.2d 36 (Utah 1981), to restore a denied right to appeal continues to be available. We conclude that, in light of the intervening revisions to rule 65B of the Utah Rules of Civil Procedure, the promulgation of rule 65C, and the 1996 enactment of the Post–Conviction Remedies Act, Utah Code Ann. § 78–35a–101 (2002), the *Johnson* remedy is no longer able to serve the purpose for which it was designed. We begin our analysis by discussing the nature of the *Johnson* remedy, concluding that it was essentially a hybrid of both coram nobis and postconvic-

tion proceeding remedies. We also explain the evolution of Utah statutory law and procedural rules and why they render the *Johnson* remedy no longer functional. We then clarify what constitutes a denial of the constitutional right to appeal and outline a new procedure to restore the right to appeal for a defendant who proves, under the framework we provide, that he has not knowingly or voluntarily waived it. We then apply this new framework to the circumstances of this case.

## I. PROCEDURAL HISTORY

### A. The Johnson Remedy

¶ 12 In *Johnson*, we held that a criminal defendant who reasonably relied on his attorney's assurance that an appeal would be timely filed was unconstitutionally denied his right to appeal his conviction. *State v. Johnson*, 635 P.2d 36, 38 (Utah 1981). We then established a procedural mechanism to restore this right in Johnson's case and in future situations in which a defendant was prevented from bringing a timely appeal through no fault of his own. We directed defendants to file a motion for resentencing in the trial court so that the thirty-day time period for bringing an appeal set forth in rule 4(a) of the Utah Rules of Appellate Procedure would begin to run anew. *Id.* at 38.

¶ 13 Manning urges us to retain the *Johnson* remedy because it allows filing for relief in the underlying criminal case, thus preserving the right to state-paid counsel in seeking an appeal. She argues that the changes to the Utah Rules of Civil Procedure have no impact on the remedy's availability because the remedy is based on the common law writ of error coram nobis [2] and may continue to function as such. In adopting the remedy in *Johnson*, however, we described "[t]he post-conviction hearing procedure [under the Utah Rules of Civil Procedure as] a successor to the common-law writ of error coram nobis," and directed defendants to seek relief under rule 65B(i). *Id.* The State accordingly argues that since the *Johnson* remedy originally proceeded under rule 65B(i), it must now be sought under rule 65C, which it considers the successor to former rule 65B(i), and the Post–Conviction Remedies Act (PCRA), Utah Code sections 78–35a–101 to – 110 (2002).

¶ 14 Based on our analysis of *Johnson* and the Rules of Civil Procedure, we conclude that neither party is entirely accurate in its assessment of *Johnson's* analytic sources. Rather, as discussed below, the *Johnson* remedy was a hybrid of both coram nobis and postconviction procedure principles, judicially fashioned to preserve the constitutional right to appeal in criminal cases. As we also discuss below, the evolution of statutory law and procedural rules since *Johnson* has foreclosed the usefulness of this remedy.

### 1. *Johnson's* Coram Nobis Foundation

¶ 15 We first examine the relationship between the common law writ of error coram nobis and the *Johnson* remedy. In *Johnson*, we examined other jurisdictions that had, by narrowly expanding the common law writ of error coram nobis, permitted " 'resentenc[ing] nunc pro tunc upon the previous finding of guilt' " as a mechanism for restoring the time frame for filing an appeal where the right to appeal had been denied. 635 P.2d at 38 (quoting *People v. Callaway*, 24 N.Y.2d 127, 299 N.Y.S.2d 154, 247 N.E.2d 128, 130 (N.Y.1969)). Under Utah common law, coram nobis had been available to "vacate a judgment of conviction on the basis of facts which, without defendant's fault, did not appear on the face of the record and as to which defendant was without other remedy." *Id.* We followed other courts in relying on coram nobis as a basis for considering "extra-record facts" to establish the denial of the right to appeal and vacate a judgment, after which the defendant would be resentenced to establish a new appeal time frame. *Id.*

¶ 16 Coram nobis principles were thus essential to the *Johnson* remedy. Consistent with the United States Supreme Court's coram nobis rulings in "right to appeal" crimi-

---

**2.** "A writ of error coram nobis is a common-law writ of ancient origin devised by the judiciary, which constitutes a remedy for setting aside a judgment which for a valid reason should never have been rendered." 24 C.J.S.Crim. L. § 1610 (2004).

nal cases, which direct that petitions be filed in the underlying criminal case, *James v. United States*, 459 U.S. 1044, 1046, 103 S.Ct. 465, 74 L.Ed.2d 615 (1982); *United States v. Morgan*, 346 U.S. 502, 506 n. 4, 74 S.Ct. 247, 98 L.Ed. 248 (1954), motions for *Johnson* resentencing are filed in the underlying criminal case rather than as separate civil proceedings, as would be required if the remedy were based solely on rule 65B or its successor postconviction procedures. This is an important element of the *Johnson* remedy, partly for judicial economy in reviewing the record, but mostly because an attorney's assistance is not guaranteed to indigent defendants in postconviction civil proceedings. By contrast, a *Johnson* motion filed in the underlying criminal case guarantees defendants the right to state-paid counsel in seeking a first appeal. *See* Utah Code Ann. § 77–32–301(5)(2002). This is important because the right to representation is an integral part of the right to appeal *Johnson* sought to protect.

¶ 17 The State argues that former rules 65B(i) and 65B(b) permitted the court to provide a pro bono attorney to an indigent petitioner in civil postconviction proceedings, as does the current PCRA section 78–35a–109(1). While the State is correct on this point, the *Johnson* remedy was fashioned not just to permit, but to guarantee, assistance of counsel in seeking a first appeal of right in the underlying criminal case, in accordance with coram nobis relief. *See Beal v. Turner*, 22 Utah 2d 418, 454 P.2d 624, 627 (1969).

¶ 18 The *Johnson* remedy also incorporates coram nobis principles by placing the burden of proof establishing denial of the right to appeal on the defendant. *State v. Montoya*, 825 P.2d 676, 679 (Utah Ct.App. 1991). Manning incorrectly argues that coram nobis and the *Johnson* remedy shift this burden to the State; she asks us to require

the State to prove a defendant's knowing and voluntary waiver of the right to appeal before a court may deny petitions seeking to restore an appeal time frame. However, coram nobis proceedings, whether styled as criminal or civil, place on the defendant the burden of proving "by a preponderance of evidence facts which will entitle him to relief." *Sullivan v. Turner*, 22 Utah 2d 85, 448 P.2d 907, 910 (1968); *see also United States v. Butler*, 295 F.Supp.2d 816, 818 (S.D.Ohio 2003). Likewise, the *Johnson* remedy requires petitioners, not the State, to produce findings in the record or conduct a hearing establishing the unconstitutional denial of the right to appeal. *Montoya*, 825 P.2d at 679.[3] This is necessary to prevent abuse by those seeking to circumvent the timeliness requirements for appeals. *Id.*

¶ 19 Therefore, notwithstanding our direction in *Johnson* that defendants claiming denial of their right to appeal apply for relief under rule 65B(i) Utah Rules of Civil Procedure, the *Johnson* remedy itself relied on coram nobis principles unavailable solely through rule 65B(i).[4]

2. *Johnson's* Postconviction Procedure Foundation

¶ 20 As previously discussed, in adopting coram nobis-type relief in *Johnson*, we found "[t]he postconviction hearing procedure" to be a successor to pleading the writ of coram nobis and directed defendants to seek relief under rule 65B(i). 635 P.2d at 38. This was so because the 1977 version of rule 65B abolished pleading "special forms of writs" in favor of "actions under these Rules." Utah R. Civ. P. 65B(a) (1977) (amended by 65B(b)(*l*)(1992)).

¶ 21 Additionally, rule 65B was well-suited as a procedural avenue for seeking *Johnson* relief because it authorized the court to take

**3.** *Montoya* suggested that a claim of being "denied effective assistance of counsel" at trial establishes a denial of a constitutional right that warranted seeking *Johnson* resentencing to resurrect an appeal. 825 P.2d at 679. Under the former rule 65B, claims of ineffective assistance of counsel could indeed be raised; now, as discussed below, rule 65C and the PCRA are the proper means to seek relief for such claims except in the limited situations defined by this case.

**4.** Manning additionally points out that *Johnson*-type relief is permitted to be filed by motion rather than by complaint, as required by rule 65B(i) and its successors, and argues that it is therefore coram nobis and not postconviction relief. We do not find this distinction determinative.

action when there had been "a substantial denial of ... rights under the Constitution of the United States or of the State of Utah,"[5] Utah R. Civ. P. 65B(i)(1)(1977) (amended by 65B(b)(*l* ) (1992)), including the constitutional right to appeal. Upon finding such a denial, rule 65B(i) authorized a court to enter as a remedy an appropriate order, such as an order for *Johnson* resentencing.[6] *Id.* 65B(i)(8).

¶ 22 Therefore, both the mechanism for filing a claim in the criminal case and the remedy via a resentencing order were available under the 1977 version of rule 65B(i), and even the extensive 1991 amendments to rule 65B did not interfere with this.[7] However, in 1996, the Legislature enacted the PCRA and this court subsequently substantially revised rule 65B, wherein former rule 65B(i) (or, after 1991, rule 65B(b)) became, in revised and expanded form, rule 65C. As we explain below, these changes affected the relief available under *Johnson* and the former rules.

¶ 23 For one thing, a defendant may no longer file a petition pursuant to rule 65B(b) in "instances governed by Rule 65C." Utah R. Civ. P. 65B(b)(1). In addition, the specific grounds for which extraordinary relief may be sought under rule 65B are now enumerated in subsection (a) of that rule, and the broad language permitting proceedings resulting from the "substantial denial of rights," constitutional or otherwise, no longer exists. *Id.* 65B(b)(11).

¶ 24 Such language also does not appear in rule 65C, which now "govern[s] proceedings in all petitions for post-conviction relief filed under [the PCRA]." *Id.* 65C(a). The PCRA proclaims itself as a remedy "for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies, including a direct appeal except as provided in Subsection (2)." Utah Code Ann. § 78–35a–102(1) (2002). Subsection (2) does not expressly address the situation where a defendant has failed, for whatever reason, to timely file a direct criminal appeal.[8] *Id.* § 78–35a–102(2). Currently, rule 65C and the PCRA do not permit motions for *Johnson* relief for defendants who have not filed a direct appeal because their right to appeal has been unconstitutionally denied. While a defendant who simply fails to file an appeal within the time limits required by rule 4(a) of the Utah Rules of Appellate Procedure would reasonably be considered to have exhausted any remedies he might have obtained thereby for purposes of the PCRA, the same is not true for a defendant who is unconstitutionally denied his right to appeal. *See State v. Penman*, 964 P.2d 1157, 1166 (Utah Ct.App.1998) (Wilkins, J., concurring) (the "denial" of the right to appeal consists of a defendant having "been prevented in some meaningful way from proceeding with [his or her] appeal[ ]"). Such a defendant must have a means of regaining that right. It follows that there must be a mechanism for distinguishing those defendants who have truly exhausted their remedy of direct appeal from those whose right to appeal has been unconstitutionally denied.

¶ 25 Therefore, the unintended result of the transformation of rule 65B(i) since this court issued its decision in *Johnson* is that a defendant who has been unconstitutionally denied a direct criminal appeal may no long-

---

**5.** "Any person imprisoned ... under a commitment of any court ... who asserts that in any proceedings which resulted in his commitment there was a substantial denial of his rights under the Constitution of the United States or the State of Utah, or both, may institute a proceeding under this Rule." Utah R. Civ. P. 65B(i)(1977)(amended by 65B(b)(1) (1992)).

**6.** The court was permitted to "enter an appropriate order ... as the court may deem just and proper" if relief was warranted. Utah R. Civ. P. 65B(i)(8)(amended by 65B(b)(11)(1992)).

**7.** Under the 1991 version of rule 65B(b)(1) and (11), a defendant was permitted to institute a proceeding "result[ing] from a substantial denial of rights" and courts were allowed to "enter an appropriate order" for relief. Utah R. Civ. P. 65B (1992) (amended 1996).

**8.** Rather, it allows defendants to file postconviction relief petitions under rule 65B if they do "not challenge a conviction or sentence," if they are "motions to correct a sentence pursuant to rule 22(e)," or if they are petitions regarding the "actions taken by the Board of Pardons and Parole." Utah Code Ann. § 78–35a–102(2) (1996).

er seek *Johnson* relief under either rule 65B or rule 65C and the PCRA. Because of this, and because the *Johnson* remedy also independently relied on coram nobis principles, we deem it inappropriate to continue to rely on the *Johnson* remedy, and conclude that the restoration of a denied direct appeal through resentencing to establish a new appeal time frame is no longer feasible. Instead, we direct defendants who claim denial of their right to appeal to follow the procedure set forth below.

### B. New Remedy for Restoring a Denied Criminal Appeal

¶ 26 Although we have determined that the remedy laid out in *Johnson*, which requires resentencing to restore a denied appeal, is no longer available, we conclude that we must provide a readily accessible and procedurally simple method by which persons improperly denied their right to appeal can promptly exercise this right. Virtually all jurisdictions provide some procedural mechanism for restoring a denied right to appeal, and we have a particular interest in doing so because of our constitutional mandate to provide a criminal appeal "in all cases." Utah Const. art. I, § 12. Further, failure to provide a direct appeal from a criminal case implicates the guarantee of due process under article I, section 7 of the Utah Constitution, *State v. Tuttle*, 713 P.2d 703, 705 n. 1 (Utah 1985), when a defendant has "been prevented in some meaningful way from proceeding" with a first appeal of right, *Penman*, 964 P.2d at 1166.

¶ 27 Since we have no remedy currently in place under the PCRA or our rules of appellate procedure for reinstating an unconstitutionally denied criminal appeal, we must again fashion such a remedy, as we did in *Johnson*. A survey of procedures used in other jurisdictions reveals that many provide

a mechanism through their postconviction remedy acts or rules of criminal or appellate procedure.[9] Others have established court rules that assert jurisdiction over "appeals by leave" at the court's discretion, *People v. Goecke*, 215 Mich.App. 623, 547 N.W.2d 338, 341 (1996), or grant a new appeal time frame through habeas corpus petitions for out-of-time appeals, *see, e.g., Odneal v. State*, 161 S.W.3d 692, 694 (Tex.App.2005); *Bowman v. Washington*, 269 Va. 1, 605 S.E.2d 585 (Va. 2004).

¶ 28 While some jurisdictions continue the practice of resentencing as a means of reinstating the time period for filing an appeal, *see, e.g., Jakoski v. State*, 136 Idaho 280, 32 P.3d 672, 678 (Idaho Ct.App.2001); *State ex. rel. Hahn v. Stubblefield*, 996 S.W.2d 103 (Mo.Ct.App.1999); *State v. Tweed*, 312 Mont. 482, 59 P.3d 1105, 1109 (2002), others have found that such resentencing "tends to create more problems than it resolves," *Boyd v. State*, 282 A.2d 169, 171 (Me.1971). We agree that resentencing is no longer a preferred remedy. For one thing, our rules "governing amended judgments" generally disfavor "enlarg[ing] the time for appeal" by means of a "nunc pro tunc entry" which does not "chang[e] the substance or character of the judgment." *State v. Garner*, 2005 UT 6, ¶ 11, 106 P.3d 729. As the *Johnson* remedy was ultimately designed to restore a denied right to appeal, we find it appropriate to focus not on resentencing but on a more direct mechanism to reinstate this right.

¶ 29 Having reviewed the differing procedural solutions among jurisdictions, we conclude that Kansas's approach is the most useful. In Kansas, where "the filing of a timely notice of appeal is [also] jurisdictional," *State v. Ortiz*, 230 Kan. 733, 640 P.2d 1255, 1257 (1982), the courts have developed a procedure, in the interest of "fundamental

---

**9.** For example, New York replaced its *Callaway* holding, on which we relied in *Johnson*, 635 P.2d at 38, with a rule of criminal procedure. *See* N.Y.Crim. Proc. Law § 460.30 (McKinney 1970) (extending the time for taking an appeal, "upon the improper conduct of a public servant or improper conduct, death, or disability of the defendant's attorney, or (b) inability of the defendant and his attorney to have communicated, in person or by mail, concerning whether an appeal

should be taken, prior to the expiration of the time within which to take an appeal due to defendant's incarceration in an institution and through no lack of due diligence or fault of the attorney or defendant"); *see also Esters v. State*, 894 So.2d 755, 757 (Ala.Crim.App.2003); *State v. Rosales*, 205 Ariz. 86, 66 P.3d 1263, 1267 (Ariz. Ct.App.2003); *Garrison v. State*, 350 Md. 128, 711 A.2d 170, 175 (1998); *State v. Meers*, 267 Neb. 27, 671 N.W.2d 234, 236 (2003).

fairness," that provides for narrow exceptions to the thirty-day jurisdictional rule that may open the door to a new appeal time frame. *Id.* at 1258.

¶ 30 The *Ortiz* jurisdictional exceptions permit a defendant to claim denial of the right to appeal in the trial court and to establish the facts in support of this claimed denial by hearing if necessary. Once the denial is established, *Ortiz* authorizes courts to reinstate the appeal time frame, similar to the operation of our *Johnson* remedy.[10] While we do not adopt Kansas's specific procedures and relief (which are broader and more complex than those we espouse), we view its approach of establishing narrow exceptions by case law as serving the interest of fundamental fairness and as an appropriate mechanism to provide the relief granted in *Johnson.* The Maine Supreme Court helpfully notes that restoring a right to appeal by direct petition is appropriate because " '[i]f the District Court has the power to set aside the judgment and resentence, it certainly would have the power to grant the right of appeal since it accomplishes the results intended.' " *Boyd,* 282 A.2d at 172 (quoting *Everett v. United States,* 303 F.Supp. 1170 (C.D.Cal.1969)); *see also Thompson v. Commonwealth,* 736 S.W.2d 319, 322 (Ky.1987).

¶ 31 Accordingly, we hold that, upon a defendant's motion, the trial or sentencing court may reinstate the time frame for filing a direct appeal where the defendant can prove, based on facts in the record or determined through additional evidentiary hearings, that he has been unconstitutionally deprived, through no fault of his own, of his right to appeal. Such circumstances would include: (1) the defendant asked his or her attorney to file an appeal but the attorney, after agreeing to file, failed to do so, *see Johnson,* 635 P.2d 36; (2) the defendant diligently but futilely attempted to appeal within the statutory time frame without fault on defendant's part, *see id.;* or (3) the court or the defendant's attorney failed to properly advise defendant of the right to appeal, *see State v. Hallett,* 856 P.2d 1060, 1061 (Utah 1993).[11]

¶ 32 Our resolution of this issue allows us to address the second question before us on certiorari—namely, whether a defendant's request for resentencing must be granted unless the record demonstrates that the defendant knowingly and voluntarily waived her right to appeal. We clarify that the State does not bear this burden of proof. Rather, in a criminal case where a defendant has failed to appeal within the required thirty-day time period, the defendant bears the burden of proving she has not knowingly or voluntarily waived the right to appeal. As was required by the *Johnson* remedy, the defendant must demonstrate by a "preponderance of evidence" that she qualifies for any of the exceptions listed above. *See Sullivan,* 448 P.2d at 910. Only if she succeeds in doing so will a court determine that she has been unconstitutionally denied this right. In such a case, the trial or sentencing court is directed to reinstate the appeal time frame if doing so is in the interest of fundamental fairness. The defendant must then file a notice of appeal within thirty days of the date the trial court issues its order.

¶ 33 We expressly state that the procedure set forth here is not available to "a defendant properly informed of his appellate rights" who simply "let[s] the matter rest, and then claim[s] that he did not waive his right to appeal." *Ortiz,* 640 P.2d at 1258. Thus, in the vast majority of cases where a

---

**10.** *See, e.g., State v. Dreiling,* 274 Kan. 518, 54 P.3d 475, 490 (2002) (appeal was reinstated when defendant's attorney promised to file an appeal but failed to do so); *State v. Parker,* 23 Kan.App.2d 655, 934 P.2d 987, 991 (1997) (*Ortiz* exceptions could not be used to grant an appeal where "one does not exist by law"); *State v. Thomas,* 21 Kan.App.2d 504, 900 P.2d 874, 876 (1995) (the rule was "developed in the interest of fundamental fairness" and therefore a defendant does not qualify for the exception if that interest would not be "substantially further[ed]"); *State*

*v. Cook,* 12 Kan.App.2d 309, 741 P.2d 379, 381 (1987) (defendant did not qualify for the exceptions when the record revealed no evidence to support the claim, and an evidentiary hearing was not required).

**11.** We have distilled this list of exceptions from our case law and a survey of those relied on in other jurisdictions. We note that this list is not intended to be exclusive.

defendant fails to comply with the rule 4(a) thirty-day requirement for filing a timely appeal, or with the rule 4(e) provision for requesting an extension of the time to appeal "upon a showing of excusable neglect or good cause," the defendant will be held to have waived his right to appeal and the claim will properly be dismissed. *State v. Bowers*, 2002 UT 100, ¶ 5, 57 P.3d 1065; *State v. Palmer*, 777 P.2d 521, 522 (Utah App. 1989).

## II. MANNING'S CLAIM OF BEING DE-NIED AN APPEAL UNDER THE NEW *MANNING* EXCEPTIONS

¶ 34 We now turn to Manning's claim that she was deprived of her constitutional right to appeal. In resolving this issue, we must first consider the nature of Manning's appeal rights and then analyze them under the framework just established.[12]

¶ 35 A defendant who knowingly and voluntarily waives his right to appeal has not been unconstitutionally denied that right. *State v. Mortensen*, 26 Utah 312, 73 P. 562, 566 (1903) (stating that provisions in article I, section 12 of the Utah Constitution are for the accused's benefit, and can be waived). While "courts generally indulge every reasonable presumption against waiver" of constitutional rights, *Bruner v. Carver*, 920 P.2d 1153, 1155 (Utah 1996), a defendant found to have expressly waived them, by, for example, entering a knowing and voluntary guilty plea where the plea agreement expressly indicates such a waiver, no longer enjoys the benefit of these constitutional protections.[13]

¶ 36 Manning cites *Weaver v. Kimball*, 59 Utah 72, 202 P. 9, 10 (1921), for the proposition that defendants who enter guilty pleas remain entitled to the article I,

section 12 right to appeal. It is true that a defendant does not waive the right to appeal simply by entering a guilty plea. *Id.* However, it is well established that this right will be considered waived where the defendant enters a knowing and voluntary guilty plea pursuant to a plea agreement that expressly waives the right to appeal and is entered in accordance with the procedural safeguards of rule 11 of the Utah Rules of Criminal Procedure. *State v. Corwell*, 2005 UT 28, ¶ 21, 114 P.3d 569. Any challenge to such a plea agreement, or to the waivers contained therein, may only be undertaken following a timely motion for withdrawal of the guilty plea. *State v. Reyes*, 2002 UT 13, ¶ 3, 40 P.3d 630.

¶ 37 Manning waived the right to appeal her conviction by entering a knowing and voluntary guilty plea pursuant to a plea agreement that expressly indicated she would waive her right to appeal. Manning could only contest this waiver by first filing a timely motion to withdraw her guilty pleas and then establishing that her pleas were not knowing and voluntary. *Id.* She was correctly informed at her plea hearing that she had thirty days to file a motion to withdraw her guilty pleas. Despite our decision in *State v. Ostler*, which was issued after Manning's plea hearing and which clarified that the thirty-day time frame for withdrawal of guilty pleas begins on the date of "final disposition," 2001 UT 68, ¶ 11, 31 P.3d 528, Manning has never sought to withdraw her guilty pleas and admits she was not prejudiced by this alleged failure to inform her at the time of sentencing that she could withdraw her guilty pleas thirty days from that date. *Manning*, 2004 UT App 87 ¶ 29 n. 9, 89 P.3d 196. Since she could not appeal her conviction or the know-

12. For the sake of expediency, we do not require Manning to file a new motion in the trial court under our new framework, nor do we remand for an additional evidentiary hearing, as we believe the record contains sufficient evidence to resolve Manning's claim.

13. *See, e.g., State v. Anderson*, 929 P.2d 1107, 1110 (Utah 1996) (right to appear and defend in person waived); *State v. Butterfield*, 784 P.2d 153, 157 (Utah 1989) (right to public trial waived); *State v. Jamison*, 767 P.2d 134, 138 (Utah App. 1989)(right to jury trial waived) (ab-

rogated on other grounds); *State v. Wilson*, 563 P.2d 792, 793 (Utah 1977)(right to counsel waived); *State v. Long*, 29 Utah 2d 177, 506 P.2d 1269, 1270 (1973) (privilege against self-incrimination waived); *State v. Brocksmith*, 888 P.2d 703, 706 (Utah Ct.App.1994)(right to appeal waived by unconditional plea agreement, foreclosing inquiry into loss of speedy trial rights without withdrawal of guilty pleas); *Duran v. Cook*, 788 P.2d 1038, 1039 (Utah Ct.App.1990) (right against being placed in double jeopardy may be waived by a plea agreement).

ing and voluntary nature of her guilty plea, any remaining rights to appeal were necessarily limited to appealing her sentence.

¶ 38 We analyze Manning's remaining right to appeal her sentence under the previously defined exceptions. The first exception applies when the defendant has asked her attorney to file an appeal and, after agreeing to do so, the attorney fails to file the appeal. The record clearly indicates that this exception does not apply here. Manning met with her attorney "three to four times after sentencing was imposed," and "at no time did she ask for him to pursue an appeal." Manning's attorney "first learned about an appeal after it was filed" fifty-seven days after sentencing. Prior to this, her attorney did not know of Manning's desire to pursue an appeal, never agreed to file an appeal, and thus did not fail to file Manning's appeal.

¶ 39 The second exception applies when the defendant has diligently but futilely attempted to appeal within the statutory time frame without fault on the defendant's part. This exception also does not apply here. Manning's untimely pro se attempt to appeal was filed fifty-seven days after sentencing. The record reveals no evidence that Manning made any attempt to pursue her appeal within the statutory thirty-day time frame or that any attempts were prevented or rendered futile without fault on her part. Nor has Manning suggested any facts that would indicate any interference that would have prevented her from filing her appeal in a timely manner.

¶ 40 The third exception applies where the court and the defendant's attorney have failed to provide the defendant with notice of the right to appeal. Manning had knowledge of her constitutional right to appeal. Before entering her guilty plea, Manning was advised by both the court and her attorney of her right to appeal in accordance with rule

11(e). As described above, Manning repeatedly acknowledged in her plea affidavit and during the plea colloquy that her attorney had informed her that her right to appeal was limited. We further conclude that Manning's attorney had no duty to further discuss with Manning her limited appeal rights after sentencing, considering her favorable sentence, the knowing and voluntary nature of her guilty plea, and Manning's express waiver in the plea agreement of "some or all appeal rights." *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (rejecting a "bright-line rule that counsel must always consult with the defendant regarding an appeal."). Manning has not suggested that she did not understand that she did in fact have a right to appeal her sentence, nor that she had any interest in challenging her sentence on appeal. Indeed, given the fact that Manning received a favorable sentence as a result of her guilty plea, it seems unlikely that she would have any such interest. We therefore conclude that Manning's attorney sufficiently informed Manning of her right to appeal.

¶ 41 Rule 22(c) of the Utah Rules of Criminal Procedure, however, requires the court to notify the defendant after sentencing of the right to appeal and the time limits for filing such an appeal.[14] Utah R.Crim. P. 22(c). There is no indication in the record that the court complied with rule 22(c) at the sentencing hearing. Again, however, the only appeal left to Manning at that time was in regard to her sentence, and, as just mentioned, Manning does not claim her right to appeal her sentence has been denied. While the court's failure to comply with rule 22(c) may well qualify for the third exception where a defendant has claimed that his right to appeal his sentence has been denied, Manning has made no such claim. We further note that rule 22(e) permits a motion to correct a sentence at any time.[15] Thus, should Manning wish to have her sentence

---

**14.** Rule 22(c) of the Utah Rules of Criminal Procedure states that

> upon a verdict or plea of guilty ... the court shall impose sentence and shall enter a judgment of conviction which shall include the plea or the verdict, if any, and the sentence. Following imposition of sentence, the court shall advise the defendant of defendant's right to

appeal and the time within which any appeal shall be filed.

**15.** Rule 22(e) states: "The court may correct an illegal sentence, or a sentence imposed in an illegal manner, at any time." Utah R. Crim P. 22(e).

reviewed, relief remains available to her under that provision. As the exceptions set forth above have been established in the interest of fundamental fairness, and we do not believe these interests are in any way furthered by granting a new appeal time frame here, we deny Manning's request to reinstate the time frame for bringing an appeal.

## CONCLUSION

¶ 42 A criminal defendant may no longer seek *Johnson* resentencing to restore a denied right to appeal. Rather, we set forth a new procedural mechanism for this purpose, requiring a defendant to file a motion in the trial court for reinstatement of a denied right to appeal under the exceptions outlined above. These exceptions permit defendants to file a motion in their underlying criminal cases in the trial court, thereby qualifying them for assistance of counsel in restoring a denied right to appeal pursuant to article I, section 12 of the Utah Constitution. While defendants who fail to meet statutory timeliness requirements for bringing an appeal are generally presumed to have waived their right to appeal, defendants may prove they have not knowingly or voluntarily waived their constitutional rights to appeal by establishing that they have been unconstitutionally deprived, through no fault of their own, of their right to appeal. The right to appeal may then be restored if it is in the interest of fundamental fairness to do so. The defendant in this case has failed to demonstrate a constitutional denial of her right to appeal that justifies restoration of the appeal time frame under this new procedure.

¶ 43 Associate Chief Justice WILKINS, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Chief Justice DURHAM's opinion.