**2021 UT 11**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

KEITH SCOTT BROWN,
*Appellant.*

No. 20190254
Heard September 16, 2020
Filed April 29, 2021

On Appeal from the denial of Motion to Reinstate Defendant's Right
to Appeal with Commensurate Right to Effective Assistance of
Counsel

Fourth District, Provo
The Honorable Christine Johnson
No. 111400408

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher D. Ballard, Asst. Solic. Gen.,
Salt Lake City, David S. Sturgill, Provo, for appellee

Ann Marie Taliaferro, Dain Smoland, Salt Lake City, for appellant

JUSTICE HIMONAS authored the opinion of the Court in which CHIEF
JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PEARCE, and
JUSTICE PETERSEN joined.

JUSTICE HIMONAS, opinion of the Court:

*God forbid that Judges upon their oath should make resolutions to
enlarge jurisdiction* - William Cowper

¶1   Keith Brown pled guilty to, and was sentenced for, child
sodomy and child sex abuse. Nine years and numerous appellate
proceedings later, Brown challenges the district court's denial of his
motion to reinstate his right to appeal. We reject Brown's entreaty.

¶2   Strain as we might, we cannot enlarge our appellate
jurisdiction to encompass Brown's challenge. The whys and

wherefores are found in the language of, and interaction between, Utah's Plea Withdrawal Statute, UTAH CODE § 77-13-6, its Post-Conviction Remedies Act, UTAH CODE § 78B-9-101 *et seq.* (the PCRA), and rule 4(f) of the Utah Rules of Appellate Procedure, as interpreted by our decisions in *Gailey v. State*, 2016 UT 35, 379 P.3d 1278; *State v. Rettig*, 2017 UT 83, 416 P.3d 520; and *State v. Flora*, 2020 UT 2, 459 P.3d 975, among others.

## I

¶3  Brown pled guilty to one count of child sodomy, a first degree felony, and two counts of sexual abuse of a child, second degree felonies, on February 17, 2011.[1] Six weeks later, the district court sentenced Brown to ten years to life in prison on the child sodomy count and to one to fifteen years on each of the child sex abuse counts, the sentences to run concurrent to one another.

¶4  At no time between entering his plea and being sentenced did Brown ask that his plea be set aside. It wasn't until over a year-and-a-half later when Brown filed a Motion for Misplea that he first sought to set aside his guilty plea. *See State v. Brown*, 2013 UT App 99, ¶ 4, 300 P.3d 1289 (per curiam). For support, Brown argued that at the time of his plea he had been "severely injured in a traumatic" car accident "from which he was still recovering," was under the influence of "mind-altering, opioid pain relievers," and not thinking clearly. The district court found against Brown on these points and denied the motion, the court of appeals dismissed Brown's ensuing appeal for want of jurisdiction, *id.* ¶ 5, and both this court and the United States Supreme Court denied his petitions for a writ of certiorari.

¶5  Undeterred, Brown trod on, filing successive petitions for postconviction relief—the first in 2013, the second in 2017. In both he maintained, among other arguments, that he had entered his guilty plea without the benefit of effective assistance of counsel. Both petitions came up short.

¶6  With respect to the 2013 petition, the district court determined that the petition was procedurally improper because Brown could have sought to withdraw his plea in a timely manner but failed to do so. Importantly, the district court found that all of

---

[1] The nature of the charges and the notoriety surrounding this case counsel that we take care to set forth only those facts that truly inform the issues before us. While this isn't a null set, it is quite limited.

the facts material to Brown's claims were known to him more than a year before he filed the petition.[2] *Brown v. State*, 2015 UT App 254, ¶¶ 4–5, 361 P.3d 124. Accordingly, the district court concluded the petition was time-barred.[3] The court of appeals affirmed, rejecting Brown's argument that the "petition was timely filed and should not be time-barred because," as Brown put it, he filed within a year of when he "*recogniz[ed] the significance* of his attorney's ineffective assistance." *Brown*, 2015 UT App 254, ¶ 7 (emphasis added).[4]

¶7   Brown's 2017 petition fared no better. Brown first filed this petition under the same case number as the 2013 petition. The thrust of his argument was the egregious injustice exception we have tossed about for some time. *See, e.g.*, *Winward v. State*, 2012 UT 85, 293 P.3d 259. The State contended, and the district court agreed, that Brown was procedurally required to file a new petition under a separate case number. After he did so, the State argued it was entitled to summary judgment because all of Brown's claims were or

---

[2] Brown asserted that the district court "should grant [his] petition because (1) he received ineffective assistance of counsel at the time of his plea and (2) his plea was not knowing nor voluntary because of the pain medication taken prior to his plea."

[3] The district court correctly noted that, under the PCRA, "a petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued." *See* UTAH CODE § 78B-9-107(1). It also correctly noted that "[a] cause of action accrues on the latest of several possible dates, including . . . the date on which the petitioner knew or should have known, in the exercise of reasonable diligence, of evidentiary facts on which the petition is based." *See id.* § 78B-9-107(2)(e).

[4] Brown advises that, in ruling on his 2013 petition, the court of appeals held that all of Brown's claims, including his claims for ineffective assistance of counsel, were "procedurally barred because he could have, but did not, move to withdraw his pleas." *Brown*, 2015 UT App 254, ¶ 22 (internal quotation marks omitted). To the extent Brown is intimating that the court of appeals determined he had to raise an ineffective assistance claim he didn't know about to be able to proceed under the PCRA, he misreads the opinion. The court of appeals, like the district court, was referring to Brown's claim that his plea was not knowingly and voluntarily made, not to his ineffective assistance claim.

could have been previously brought. Again, the district court agreed and granted summary judgment in favor of the State.

¶8    This brings us to the present: Brown's motion to reinstate his right to appeal[5] and his appeal from the denial of that motion. Per Brown, the motion did not detail "the grounds of ineffective assistance of counsel or the reasons why his plea was invalid"; rather, it invited the district court to strike down the Plea Withdrawal Statute as unconstitutional and to fashion "some procedural mechanism . . . wherein he could raise and detail his plea-based claims and have them reviewed on the merits." The district court declined Brown's invitation, noting "that it is not in a position to overrule prior holdings of higher courts, including the Utah Supreme Court, who have determined that Utah's Plea Withdrawal Statute is constitutional."

## II

¶9    Brown makes a two-pronged argument to us for the unconstitutionality of Utah's Plea Withdrawal Statute, UTAH CODE § 77-13-6. First, he argues that because the statute fails to afford him the "right to appeal (or first review) of his pre-sentencing claims *with the attached right to effective assistance of counsel,*" it violates multiple provisions of the Utah and United States Constitutions. Second, he argues that the statute violates the "separation of powers provisions" of the Utah Constitution. We wish to be clear: These arguments raise meaty constitutional questions that deserve our attention. But we cannot turn a blind eye to the defect in our appellate jurisdiction in this matter.

¶10 Jurisdiction is the blood in our judicial system. Because of its vitalness, we "have an independent obligation to ensure that we have [it] over all matters before us." *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 31, 469 P.3d 989; *see also State v. Collins*, 2014 UT 61, ¶ 21, 342 P.3d 789 ("Appellate courts do not enjoy unlimited power to review the actions of trial courts and cannot conjure jurisdiction." (citation omitted) (internal quotation marks omitted)); *Breitenfeld v. Sch. Dist. of Clayton*, 399 S.W.3d 816, 820, n.3

---

[5] Brown filed this motion pursuant to *Manning v. State*, 2005 UT 61, 122 P.3d 628, and rule 4(f) of the Utah Rules of Appellate Procedure in May of 2018. The full title of the motion is Motion to Reinstate Defendant's Right to Appeal with Commensurate Right to Effective Assistance of Counsel.

(Mo. 2013) (en banc) (determining no proper basis for invoking the court's exclusive jurisdiction and noting that "[t]his Court may not obtain jurisdiction of the subject matter of an appeal by consent, waiver, or in the interest of judicial economy").

¶11   A categorical prerequisite to appellate jurisdiction is a valid procedural basis for accessing the right to appeal. *State v. Lara*, 2005 UT 70, 124 P.3d 243, is instructive. In *Lara*, we held that "[t]o invoke appellate jurisdiction after an appeal has been dismissed a party must establish the existence of two components: jurisdictional authority and a procedure to access it." *Id.* ¶ 8. Yes, *Lara* speaks in terms of "after an appeal has been dismissed," *id.*, but this is solely because that is how the jurisdictional issue factually presented itself in that matter. The requirement of a procedure that allows a party to access appellate jurisdiction is not limited to the facts of *Lara*; it applies across the spectrum. *See, e.g., In re Krempp*, 77 F.3d 476, *1 (5th Cir. 1995) (per curiam) (unpublished) ("Because the Krempps have presented no valid basis for invoking our appellate jurisdiction, we must dismiss this appeal and assess the Krempps with all costs." (citation omitted)).

¶12 The requirement of a valid procedural basis for lodging an appeal makes total sense. Without it, filing in the appellate courts of this state would turn into a legal free-for-all. Unfortunately for Brown, and as the State points out, this fundamental requirement for the exercise of our appellate jurisdiction is wanting here.

¶13 Before us, as before the district court, Brown relies on *Manning v. State*, 2005 UT 61, 122 P.3d 628, and rule 4(f) of the Utah Rules of Appellate Procedure as the basis for asking that we exercise jurisdiction and strike down the Plea Withdrawal Statute. His reliance is misplaced. As we explain in the paragraphs that follow, *Manning* has been supplanted by rule 4(f), and rule 4(f) doesn't provide us with appellate jurisdiction to consider Brown's constitutional arguments.

¶14 We take up the *Manning* point first. In that case, Carolyn Manning, a pro se criminal defendant, filed an untimely notice of appeal.[6] 2005 UT 61, ¶ 5. After the district court dismissed Ms.

---

[6] A timely notice of appeal, like a valid procedural basis, is a prerequisite to the exercise of appellate jurisdiction. *See, e.g., Reisbeck v. HCA Health Servs. of Utah, Inc.*, 2000 UT 48, ¶ 5, 2 P.3d 447 ("Failure to file a timely notice of appeal deprives this court of jurisdiction over the appeal.").

Manning's untimely notice, she filed an extraordinary writ in which she "claimed that her attorney 'did not inform her that she could file a notice of appeal within 30 days of entry of judgment,' and that, as a result, her 'right to appeal under Article I, section 12 of the Utah Constitution [had] been violated.'" *Id.* ¶ 6 (alteration in original). On certiorari review, we affirmed the court of appeals' affirmance of the district court's denial of the defendant's petition. In so doing, we clarified the process by which criminal defendants "improperly denied their right to appeal can promptly exercise this right." *Collins*, 2014 UT 61, ¶ 23 (quoting *id.* ¶ 26). More directly, we "held that 'the trial or sentencing court may reinstate the time frame for filing a direct appeal where the defendant can prove . . . that he has been unconstitutionally deprived, through no fault of his own, of his right to appeal.'" *Id.* (alteration in original) (quoting *Manning*, 2005 UT 61, ¶ 26).

¶15 Following our opinion in *Manning*, we amended our appellate rules to "formalize[]" the process. *Ralphs v. McClellan*, 2014 UT 36, ¶ 16, 337 P.3d 230 ("The threshold question concerns the applicability of the principles set forth in *Manning*, as now formalized in appellate rule 4(f)."). Accordingly, *Manning* does not supply a valid procedural basis for accessing the right to appeal separate and apart from rule 4(f); rather, 4(f) governs.

¶16 Rule 4(f) provides in full as follows:

> (f) *Motion to reinstate period for filing a direct appeal in criminal cases.* Upon a showing that a criminal defendant was deprived of the right to appeal, the trial court shall reinstate the thirty-day period for filing a direct appeal. A defendant seeking such reinstatement shall file a written motion in the sentencing court and serve the prosecuting entity. If the defendant is not represented and is indigent, the court shall appoint counsel. The prosecutor shall have 30 days after service of the motion to file a written response. If the prosecutor opposes the motion, the trial court shall set a hearing at which the parties may present evidence. If the trial court finds by a preponderance of the evidence that the defendant has demonstrated that the defendant was deprived of the right to appeal, it shall enter an order reinstating the time for appeal. The defendant's notice of appeal must be filed with the clerk of the trial court within 30 days after the date of entry of the order.

UTAH R. APP. P. 4(f). The point of 4(f), as the language of the rule so plainly illustrates, is to provide criminal defendants who have been deprived of an appeal through no fault of their own with an avenue for relief. And while *Manning* no longer supplies a valid procedural basis for accessing the right to appeal separate and apart from rule 4(f), it does inform the discussion of what rule 4(f) means by "deprived of the right to appeal." In *Manning*, we explained that criminal defendants were entitled to having their appeal rights reinstated where they demonstrate that they had lost their appeal rights because (1) counsel failed to file an appeal after agreeing to do so; (2) despite diligently attempting to file a timely appeal, the defendant was unable to do so through no fault of their own; or (3) the court or the defendant's counsel "failed to properly advise [them] of the right to appeal." *Manning*, 2005 UT 61, ¶ 31.

¶17 None of these scenarios are present here. Brown doesn't allege that he told his attorney to file a direct appeal but the attorney failed to do so. He doesn't claim that he tried to file a direct appeal on his own, but failed. And he doesn't charge that either the court or his attorney failed to tell him of his appellate rights. In short, Brown knew of and could have filed a direct appeal, either through counsel or on his own. He just didn't. As such, rule 4(f) offers him no relief. As the State succinctly puts it, "[r]ule 4(f) provides a narrow remedy, reinstating only whatever appellate rights a defendant possessed when his right to a direct appeal was improperly forfeited." It doesn't, however, supply a route to appeal unless his right to appeal was "improperly forfeited" as described above.

¶18 In short, Brown is not really claiming that he was deprived of a direct appeal; rather, he wants a do-over. He wants the opportunity to present constitutional arguments now that—to the extent they can be raised via a direct appeal in this setting—were equally available to him following the entry of his sentence, judgment, and commitment. That is a dog that will not hunt, at least in the fields of this case.

¶19 This doesn't mean that criminal defendants are without a way to get constitutional arguments like those Brown advances before an appellate court. As we explain below, and at a minimum, the PCRA presents a viable option. A brief clarification of the interplay between the Plea Withdrawal Statute and the PCRA, as informed by our decisions in *Gailey v. State*, 2016 UT 35, 379 P.3d 1278; *State v. Rettig*, 2017 UT 83, 416 P.3d 520; and *State v. Flora*, 2020 UT 2, 459 P.3d 975, is in order, and we review each case in the above-listed order.

¶20 We surmise that June 17, 2013, wasn't a particularly rosy day for Shantelle Gailey. "Over the course of a few hours," she "entered her initial appearance . . . , was appointed counsel, waived her right to a preliminary hearing and trial, pled guilty, waived the waiting period for sentencing, and received judgment and sentence." *Gailey*, 2016 UT 35, ¶ 1. Presumably not too happy with either her decision to plead guilty or her sentence, Ms. Gailey timely filed a *direct appeal* with the court of appeals, which certified the matter to us. *Id.* ¶ 7.

¶21 We rejected Gailey's appeal along three lines. First, we reaffirmed "that the Plea Withdrawal Statute bars direct appeals once sentencing takes place." *Id.* ¶ 3. Second, we noted that the PCRA "provides an alternative procedural route for challenging" a potentially invalid plea. *Id.* ¶¶ 3, 31. And third, we held that Gailey's arguments that the PCRA was an inadequate substitute for a direct appeal because "she could hypothetically be denied state-paid counsel or the effective assistance of counsel" in a PCRA proceeding were not ripe because she had "not chosen to pursue such a proceeding." *Id.* ¶ 3. But, as we later explained, *Gailey* left open the question of "whether the Plea Withdrawal Statute could be *applied* in a manner infringing the state constitutional right to appeal." *Rettig*, 2017 UT 83, ¶ 16.

¶22 We provided the answer to the question in our review of Benjamin Rettig's guilty pleas on charges of aggravated murder and aggravated kidnapping. There, we held that "the Plea Withdrawal Statute is not an infringement of the state constitutional right to an appeal because it does not foreclose an appeal but only narrows the issues that may be raised on appeal." *Id.* ¶ 22. We further held that "[t]he standard set forth in the Plea Withdrawal Statute is *both* a rule of preservation and a jurisdictional bar on appellate consideration of matters not properly preserved." *Id.* ¶ 27.

¶23 Mr. Rettig had also challenged a portion of the Plea Withdrawal Statute—subsection (2)(c)—under article VIII, section 4 of the Utah Constitution. We held in response "that the legislature acted clearly within its constitutional authority in enacting subsection 2(c)." *Id.* ¶ 52. But we expressly left open the possibility that the legislature may have overstepped with respect to subsection 2(b), which Rettig failed to challenge. *Id.* ¶ 59 n.14 ("The procedural dimension of the preservation rule in the statute—the time deadline it sets forth for the filing of motions—may be a potent basis for questioning the constitutionality of this statute under article VIII, section 4. The problem is that Rettig has not asserted an article VIII, section 4 challenge to this procedural bar (in subsection 2(b)).").

¶24 *Flora*, 2020 UT 2, rounds out the trilogy. There, the defendant, Paul Flora, unlike Gailey and Rettig, "timely moved to withdraw his plea" under the Plea Withdrawal Statute. *Id.* ¶ 1. "After the district court denied his motion, Mr. Flora appealed, raising two new arguments under the plain-error and ineffective-assistance-of-counsel exceptions to the preservation rule." *Id.* As in *Gailey*, the court of appeals certified the matter to us for appellate review. *Id.*

¶25 We held that despite Flora's timely motion to withdraw his plea, "the Plea Withdrawal Statute prohibit[ed] us from considering. . . Flora's unpreserved arguments." *Id.* In the process, however, we observed that criminal defendants similarly situated to Flora can pursue their unpreserved claims through the PCRA. *Id.* ¶¶ 20–26.[7]

¶26 Read together *Gailey*, *Rettig*, and *Flora* make two points abundantly clear. First, the Plea Withdrawal Statute bars the appellate courts of Utah from reviewing on direct appeal *all* untimely or unpreserved challenges to guilty pleas. Second, criminal defendants can still challenge the Plea Withdrawal Statute and their pleas through the PCRA.[8] But for the reasons set forth in this

---

[7] Flora argued to us that the PCRA was not an adequate substitute for unpreserved arguments to withdraw a plea "because the PCRA prohibits granting relief 'upon any ground that . . . could have been but was not raised at trial or on appeal.'" *Flora*, 2020 UT 2, ¶ 24 (alteration in original) (quoting UTAH CODE § 78B-9-106(1)(c)). We rejected this argument for several reasons, not the least of which is that the provision of the PCRA to which Flora referred does not apply "if the failure to raise that ground was due to ineffective assistance of counsel." *Id.* ¶ 25 n.30 (quoting UTAH CODE § 78B-9-106(3)(a)).

[8] Depending on the nature of the contention, they may also be able to raise challenges by means of a declaratory judgment action, *see, e.g.*, *Spackman ex rel. Spackman v. Bd. Educ. of Box Elder Cnty. Sch. Dist.*, 2000 UT 87, ¶ 18, 16 P.3d 533 (noting that "declaratory judgments are . . . well-recognized and effective means of protecting important constitutional rights"), or a motion brought pursuant to rule 22(e) of the Utah Rules of Criminal Procedure, *see, e.g.*, *Archuleta v. State*, 2020 UT 62, ¶ 36, 472 P.3d 950 ("[W]e note that rule 22(e) has been amended . . . to address a gap in the coverage of the PCRA."); and an extraordinary writ.

(continued . . .)

opinion, *see supra* ¶¶ 10–18, they cannot raise untimely or unpreserved challenges through a rule 4(f), *Manning*-like motion. For while our appellate jurisdiction is broad, it is far from infinite. We are "bounded by constitutional and statutory grants of jurisdiction and by court rules that give practical procedural effect to the jurisdiction conferred by our Constitution and legislative branch." *Lara*, 2005 UT 70, ¶ 10.[9]

### III

¶27 The importance of the substantive constitutional questions Brown raises is not lost on us. We, like the parties before us today, recognize that our guidance on these questions is much needed. But we are bound by the elemental requirement that we exercise our appellate function consistent with jurisdictional precepts, precepts that sometimes limit our ability to hear and decide otherwise deserving matters.

¶28 We dismiss Brown's appeal from the denial of his Motion to Reinstate Defendant's Right to Appeal with Commensurate Right to Effective Assistance of Counsel for want of appellate jurisdiction.

---

With respect to this last procedural candidate, we note that Brown asserted in his Notice of Appeal that "[t]he Utah Supreme Court is also being asked to . . . invoke its extraordinary writ authority to fashion a remedy in the wake of the constitutional denial that occurred here." We also note, however, that Brown's briefs are devoid of any discussion of any consequence on this topic.

[9] Of course, we do acknowledge that in *Manning* we were able to appropriately create, by decision, a new remedy for restoring a denied criminal appeal and a corresponding right of appeal. 2005 UT 61. But there, unlike here, there was neither a remedy in place "for reinstating an unconstitutionally denied [direct] criminal appeal," nor a legislative bar jurisdictionally proscribing the arguments that could be presented in that appeal. *Id.* ¶ 27.