*This opinion is subject to revision before final publication in the Pacific Reporter*

**2020 UT 62**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

MICHAEL ANTHONY ARCHULETA,
*Appellant,*

*v.*

STATE OF UTAH,
*Appellee.*

Nos. 20160419, 20160992
Heard January 10, 2018
Supplemental Briefing Completed June 13, 2018
Filed August 20, 2020

On Direct Appeal

Fourth District, Fillmore
The Honorable Jennifer A. Brown
Case No. 140700047

Attorneys:

Leticia Marquez, Charlotte G. Merrill, Jon M. Sands,
Phoenix, AZ, Zachary E. Peterson, Salt Lake City, for appellant

Sean D. Reyes, Att'y Gen., Andrew F. Peterson, Aaron G.
Murphy, Asst. Solics. Gen., Salt Lake City, for appellee

JUSTICE PETERSEN authored the opinion of the Court in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE HIMONAS, and JUSTICE PEARCE joined.

JUSTICE PETERSEN, opinion of the Court:

## INTRODUCTION

¶1 In 1989, a jury convicted Michael Anthony Archuleta of first-degree murder and sentenced him to death. After a direct appeal and two unsuccessful petitions for post-conviction relief in state court, Archuleta filed a habeas petition in federal court in 2012. In his federal petition, he alleged that he is intellectually

disabled and therefore it is unconstitutional for the State to execute him. *See Atkins v. Virginia*, 536 U.S. 304 (2002). Archuleta argued that he had not exhausted this claim in state court and asked for a stay of the federal proceedings. The federal court granted the stay and gave Archuleta's federal counsel leave to file his *Atkins* claim in state court.

¶2    In 2014, Archuleta's federal counsel filed in state court the petition that is now before us. This is Archuleta's third state petition for post-conviction relief. It includes not only an *Atkins* claim but also twelve additional claims unrelated to *Atkins*. The post-conviction court granted summary judgment against Archuleta on all of his claims, concluding they were barred under the Post-Conviction Remedies Act (PCRA). Archuleta appealed.[1]

¶3    The post-conviction court's order and the parties' briefing have presumed that the PCRA governs Archuleta's *Atkins* claim. But upon review, we observed that no provision of the PCRA plainly applied to that specific claim. We requested supplemental briefing from the parties on this issue, and each cited to a different PCRA provision as an avenue for relief.

¶4    We conclude that no provision of the PCRA applies to Archuleta's *Atkins* claim. Accordingly, the PCRA does not provide a remedy for this claim. Archuleta also argues that if the PCRA bars his claim and he has no avenue of relief, then the PCRA amounts to an unconstitutional suspension of the writ of habeas corpus. He asserts that we should therefore provide a common-law equitable remedy that permits us to address his *Atkins* claim on the merits. But because we have not found that the PCRA bars his claim or that there is no means of relief available to him, we reject this argument as unripe. Finally, with respect to Archuleta's twelve additional claims, which do arise under the PCRA, we

---

[1] Archuleta sought review of the post-conviction court's dismissal of his claims in two separate appeals. Case number 20160419 relates to Archuleta's *Atkins* claim and 20160992 relates to the remaining twelve claims. These cases have not been consolidated, but we resolve them together in this opinion. Additionally, the State filed a motion for summary disposition of case 20160992, upon which we deferred ruling until plenary presentation on the merits. We deny the State's motion and resolve case 20160992 herein.

agree with the post-conviction court that each one is procedurally barred.

¶5    Accordingly, we affirm the post-conviction court's dismissal of Archuleta's *Atkins* claim, not because it is barred by the PCRA but because it is not cognizable under that statute. And we affirm with regard to his remaining claims.

## BACKGROUND

¶6    Archuleta's case has a long history in our state courts. In December 1989, a jury in the fourth judicial district convicted Archuleta of first-degree murder and sentenced him to death. On direct appeal in 1993, we affirmed his conviction and death sentence. *See State v. Archuleta* (*Archuleta I*), 850 P.2d 1232, 1249 (Utah 1993).

¶7    Archuleta filed a petition for a writ of habeas corpus in the fourth judicial district in 1994 (1994 Petition).[2] The 1994 Petition raised numerous claims, including assertions of ineffective assistance of trial and appellate counsel. The post-conviction court granted a motion to dismiss the petition. We reversed in part, concluding that Archuleta had a Sixth Amendment right to pursue claims of ineffective assistance of counsel against his trial and appellate lawyers. We remanded his petition for further proceedings. *See Archuleta v. Galetka* (*Archuleta II*), 960 P.2d 399, 399 (Utah 1998).

¶8    Four years later in 2002, Archuleta filed his second petition for post-conviction relief (2002 Petition), raising forty-three separate claims, many with numerous subclaims. In claims one through thirty, Archuleta raised new claims directly challenging his conviction and sentence. He also raised several claims of ineffective assistance of counsel, alleging that his trial and appellate counsel were ineffective for not having previously raised the first thirty claims.

¶9    Six days after Archuleta filed his 2002 Petition, the United States Supreme Court decided the case of *Atkins v. Virginia*, 536 U.S. 304 (2002). In it, the Supreme Court changed the landscape of death-penalty jurisprudence by holding it was cruel and unusual

_____

   [2] Utah's legislature enacted the PCRA on April 29, 1996, which applies "only to post-conviction proceedings filed on or after July 1, 1996." UTAH CODE § 78B-9-103.

punishment to execute an intellectually disabled person. *Id.* at 321. Archuleta did not amend his petition to include an *Atkins* claim.

¶10 The post-conviction court granted summary judgment against Archuleta on all but two of his claims. The court held an evidentiary hearing on the remaining claims but ultimately denied them. Archuleta appealed this ruling.

¶11 In August 2007, while his appeal was pending, Archuleta asked the federal court to appoint counsel to represent him in federal habeas proceedings in the event his state appeal failed. The federal court immediately appointed federal counsel.

¶12 In February 2008, Archuleta's state post-conviction counsel asked this court for permission to withdraw from the case. We granted the request and temporarily remanded the case to allow the post-conviction court to appoint substitute counsel. In 2009, while Archuleta's appeal to this court was still pending, Archuleta—now with new post-conviction counsel—moved the post-conviction court to set aside its summary judgment order and grant him a new trial.

¶13 Archuleta filed this motion pursuant to rules 59 and 60(b) of the Utah Rules of Civil Procedure, as well as the Sixth and Fourteenth Amendments to the United States Constitution. He alleged his prior state post-conviction counsel had been ineffective. In this motion, Archuleta made an *Atkins* claim for the first time. The post-conviction court held oral arguments on the rule 59 and 60(b) portions of the motion and ultimately denied them. Archuleta appealed the court's rule 60(b) decision.

¶14 We considered the post-conviction court's grant of summary judgment and denial of Archuleta's rule 60(b) motion, and we affirmed both. *Archuleta v. Galetka* (*Archuleta III*), 2011 UT 73, ¶¶ 1, 170, 267 P.3d 232. We held that Archuleta's prior post-conviction counsel's performance was not the kind of "egregious lawyer misconduct" that would justify setting aside the post-conviction court's order pursuant to rule 60(b). *See id.* ¶¶ 168–69. As a result, we declined to individually address each of Archuleta's claims of prior post-conviction counsel's ineffective assistance. *Id.* ¶ 169. Archuleta's *Atkins* claim was one of those claims. *See id.* ¶¶ 149, 169.

¶15 In December 2012, about one year after we decided *Archuleta III*, Archuleta filed a federal habeas petition. Among other claims, his petition asserted that he was intellectually disabled and therefore exempt from the death penalty under

*Atkins*. Archuleta and the State stipulated to a scheduling order that allowed him to move to stay the federal case while he returned to state court to exhaust his *Atkins* claim. The federal court granted Archuleta's motion for a stay on November 12, 2014.

¶16 One month later, Archuleta filed the instant petition for relief in the fourth judicial district. In addition to an *Atkins* claim, Archuleta raised twelve more claims.

¶17 The State moved for summary judgment. But then in its reply memorandum, the State withdrew its motion on the merits. It requested the court to stay determination of the remainder of the motion, which argued that the PCRA's time and procedural rules barred the *Atkins* claim, until the merits of the *Atkins* claim could be fully adjudicated in an evidentiary hearing.

¶18 However, in an order disposing of all outstanding motions, the post-conviction court granted the State's motion for summary judgment. The court first determined that Archuleta had not adequately disputed the State's recitation of the material facts. The court then ruled that the PCRA barred Archuleta's *Atkins* claim because he did not raise it within one year of its accrual and that all of his other claims were also barred under the PCRA.

¶19 Archuleta filed a timely notice of appeal. We have jurisdiction to hear this case pursuant to Utah Code section 78A-3-102(3)(i).

## STANDARD OF REVIEW

¶20 "We review an appeal from an order dismissing or denying a petition for post-conviction relief for correctness without deference to the lower court's conclusions of law." *Taylor v. State*, 2007 UT 12, ¶ 13, 156 P.3d 739 (citation omitted). Moreover, "[w]hen confronted with ineffective assistance of counsel claims, we review a lower court's purely factual findings for clear error, but [we] review the application of the law to the facts for correctness." *Id.*

## ANALYSIS

¶21 We first address whether Archuleta's *Atkins* claim is cognizable under the PCRA and determine it is not. We then turn to Archuleta's argument that if the PCRA bars his claim and he has no available means of relief, we should recognize a common-law equitable remedy that permits us to address his

*Atkins* claims on the merits. We reject this claim as unripe. Finally, we address each of Archuleta's remaining twelve claims and conclude they are procedurally barred under the PCRA. He has already litigated all but two of them. And with respect to the remaining two claims, we conclude he could have raised them many years ago.

## I. THE *ATKINS* CLAIM AND THE POST-CONVICTION REMEDIES ACT

¶22  A threshold question in this case is whether Archuleta's *Atkins* claim is cognizable under the PCRA. Because the PCRA provides that it is "the sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies," UTAH CODE § 78B-9-102(1)(a), the post-conviction court and both parties have assumed that the PCRA governs Archuleta's *Atkins* claim. But that is not so clear.

¶23  In their initial briefing, the parties did not analyze which subsection of the PCRA applied to this claim. So we asked them to do so in supplemental briefing. Archuleta and the State gave different answers to this question.

¶24  Archuleta submits that Utah Code section 78B-9-104(1)(a) permits him to file his *Atkins* claim. This section allows petitioners to file an action if their "conviction was obtained or the sentence was imposed in violation of the United States Constitution or Utah Constitution." *Id*. § 78B-9-104(1)(a).

¶25 But the plain language of this provision shows that it does not apply to Archuleta's *Atkins* claim. It allows for relief when a "conviction *was* obtained or the sentence *was* imposed" unconstitutionally. *Id.* (emphases added). The use of the past tense indicates that this section applies where the conviction or sentence was unconstitutional at the time it was handed down. But that was not the case here. Even assuming Archuleta is intellectually disabled, when he was sentenced to death it was not unconstitutional to execute an intellectually disabled person. *See Penry v. Lynaugh*, 492 U.S. 302 (1989), *abrogated by Atkins v. Virginia*, 536 U.S. 304 (2002). *Atkins* was not decided until years later. Accordingly, section 104(1)(a) does not apply here.

¶26 The State argues that a different section of the PCRA applies to Archuleta's *Atkins* claim. The State points to section 104(1)(f)(ii), which allows petitioners to file an action to vacate or modify their conviction or sentence when the petitioner claims entitlement to relief under a new rule that "decriminalizes the

conduct that comprises the elements of the crime for which the petitioner was convicted." UTAH CODE § 78B-9-104(1)(f)(ii). The State argues that, while not obvious from the language of the rule, this section also applies to status exemptions announced after a petitioner's conviction.

¶27 The State reasons that the legislature intended to codify the retroactivity rules announced in *Teague v. Lane*, 489 U.S. 288 (1989), and its progeny. This federal case law holds that while new constitutional rules of criminal procedure generally do not apply retroactively, new substantive constitutional rules do. *Id.* at 311. And substantive constitutional rules include not only those that decriminalize certain conduct, but also those that exempt classes of defendants from punishment based on their status. *Montgomery v. Louisiana*, 136 S. Ct. 718, 728–29 (2016). The State reasons that by referencing the first type of substantive constitutional rule in section 104(1)(f)(ii), the legislature must have intended to include both categories of substantive constitutional rule.

¶28 But this argument does not find support in the statute's language. This section expressly provides a remedy when a new constitutional rule decriminalizes the conduct for which a petitioner was convicted. It says nothing about new constitutional status exemptions. And absent such language, we will not presume the legislature intended to include it.

¶29 We note that the PCRA also provides a remedy when "the petitioner can prove entitlement to relief under a rule announced by the United States Supreme Court . . . after conviction and sentence became final on direct appeal." UTAH CODE § 78B-9-104(1)(f). But this applies only when "the rule was dictated by precedent existing at the time the petitioner's conviction or sentence became final." *Id.* § 78B-9-104(1)(f)(i). The holding in *Atkins* was not dictated by precedent existing at the time Archuleta's conviction or sentence became final. Rather, it abrogated *Penry v. Lynaugh*, 492 U.S. 302 (1989).

¶30 Thus, Archuleta's *Atkins* claim presents a novel situation in which the PCRA does not recognize the claim as a ground for relief—even if Archuleta had timely filed his *Atkins* claim under the PCRA. For this reason, its procedural and time bars do not apply. Accordingly, we do not address the question of whether the PCRA's time and procedural bars prevent Archuleta from bringing his *Atkins* claim. We affirm the post-conviction court's dismissal of this claim on the alternative basis that it is not cognizable under the PCRA.

## II. REQUEST FOR COMMON-LAW RELIEF

¶31 Next, Archuleta argues that if the PCRA bars his *Atkins* claim and he therefore has no avenue of relief, then the PCRA is unconstitutional because it effectively suspends the writ of habeas corpus in violation of the Utah Constitution. *See* UTAH CONST. art. I, § 5. He argues that we should respond by exercising what he describes as our traditional common law authority over collateral proceedings to provide him an opportunity to raise his challenge.

¶32 But as we have explained, we have not found that the PCRA's procedural and time bars block Archuleta's *Atkins* claim. Rather, we have found only that the PCRA does not contain a provision recognizing this type of claim.

¶33 Accordingly, Archuleta's claim that he has no avenue of relief is premature. We have determined only that the specific relief he has pursued is unavailing, not that the PCRA prevents him from seeking any relief.

¶34 Beyond the PCRA, another mechanism to correct sentences that are alleged to be illegal is Utah Rule of Criminal Procedure 22(e). The PCRA "does not apply to . . . motions to correct a sentence pursuant to Rule 22(e)." UTAH CODE § 78B-9-102(2). Accordingly, the PCRA's time and procedural bars do not apply to claims brought under rule 22(e). And such claims "are not restricted by the time limits for bringing notice of appeal. Nor are they waived by failure to raise them at the first opportunity before the district court." *State v. Telford*, 2002 UT 51, ¶ 5, 48 P.3d 228. "This makes theoretical sense because an illegal sentence is void and, like issues of jurisdiction, [may be raised] at any time." *State v. Brooks*, 908 P.2d 856, 860 (Utah 1995).

¶35 Neither party to this appeal argued in their initial briefing that rule 22(e) had any application. In an order for supplemental briefing, we asked the parties, among other things, whether Archuleta's *Atkins* claim is cognizable under rule 22(e), and accordingly foreclosed from litigation in a PCRA proceeding. Both parties' supplemental briefs responded that, based on our decision in *State v. Houston*, 2015 UT 40, 353 P.3d 55, rule 22(e) was not the proper vehicle for Archuleta's *Atkins* claim because

Archuleta is making an "as-applied challenge," as opposed to a "facial challenge."[3]

¶36 Without addressing whether this reading of *Houston* is correct, we note that rule 22(e) has been amended since the parties submitted their supplemental briefing to address a gap in the coverage of the PCRA. *See* UTAH CODE § 78B-9-104(1)(f)(i) (providing a remedy when a petitioner can prove entitlement to relief under a rule announced after conviction and sentence became final and the rule *was dictated by precedent existing at the time the petitioner's conviction or sentence became final*). The current rule 22(e) states,

> The court must correct the sentence of a defendant who can prove that the sentence is unconstitutional under a rule established or ruling issued by the United States Supreme Court, the Utah Supreme Court, or the Utah Court of Appeals after sentence was imposed, and the rule or ruling was *not* dictated by precedent existing at the time the defendant's conviction or sentence became final.

UTAH R. CRIM. P. 22(e)(2) (emphasis added). Of course, this applies only when a sentence, not a conviction, is being challenged.

¶37 Archuleta has not filed a motion under rule 22(e). So his assertion that he has no avenue for relief is not ripe. "A dispute is ripe when a conflict over the application of a legal provision has sharpened into *an actual or imminent clash of legal rights* and obligations between the parties thereto." *Metro. Water Dist. v. Sorf*, 2019 UT 23, ¶ 10, 445 P.3d 443 (citation omitted). Alternatively, an "issue is not ripe . . . if there exists no more than a difference of opinion regarding the *hypothetical application of a provision* to a situation in which the parties might, at some future time, find themselves." *Id.* (citation omitted).

---

[3] An "as-applied challenge" is a "claim that a law . . . though constitutional on its face, is unconstitutional as applied," or that the law "is unconstitutional on the facts of a particular case or in its application to a particular party." *Challenge*, BLACK'S LAW DICTIONARY (11th ed. 2019). A "facial challenge" is a "claim that a statute is unconstitutional on its face—that is, that it always operates unconstitutionally." *Id.*

¶38 Such is the case here. Archuleta has asserted that the PCRA is unconstitutional to the extent that it forecloses all avenues for habeas relief. But the allegedly unconstitutional application of the PCRA is not "imminent." Because Archuleta has not pursued a rule 22(e) motion, and because such motion is expressly allowed by the terms of the PCRA, his claim is at most a "hypothetical application" of the PCRA's exclusive remedy provision, UTAH CODE § 78B-9-102(1)(a), and rule 22(e). Accordingly, we reject this claim as unripe.

### III. ARCHULETA'S REMAINING TWELVE CLAIMS

¶39 In addition to his *Atkins* claim, Archuleta raises twelve unrelated claims. We conclude that they are procedurally barred because Archuleta has already litigated ten of them, sometimes more than once. And the two he has not previously raised could have been raised many years ago.

¶40 The state post-conviction court bifurcated the *Atkins* claim from these additional claims. In claims numbered two through thirteen,[4] Archuleta asserts that: (2) trial counsel was ineffective; (3) trial counsel was ineffective for failing to investigate and present mitigating evidence; (4) appellate and post-conviction counsel were ineffective; (5) his sentence is disproportionate to the sentence of his codefendant and others; (6) the trial court erred by failing to grant a motion for a mistrial; (7) the trial court unconstitutionally allowed evidence of an uncharged offense; (8) Utah's death-penalty scheme violates both the United States and Utah constitutions; (9) the State withheld exculpatory evidence; (10) the appellate record is incomplete and inadequate for meaningful review; (11) these errors, combined, constitute cumulative error; (12) executing Archuleta after almost twenty-five years of confinement constitutes cruel and unusual punishment; and (13) empirical evidence over the past thirty-six years shows that the death penalty in general constitutes cruel and unusual punishment.

¶41 The State moved for summary judgment on all of Archuleta's non-*Atkins* claims. The post-conviction court concluded that each claim was barred under the PCRA in multiple ways. First, the court ruled that all of the claims were

---

[4] These claims begin with number two because the *Atkins* claim is the first in the petition on appeal.

time barred because Archuleta had raised them over two years earlier in his federal habeas petition.[5] The court also determined that Archuleta had already raised most of these claims in past proceedings, so they were procedurally barred. And the court concluded that those few claims that had not been previously raised, could have been raised and therefore were also procedurally barred.

¶42 While the post-conviction court found that the claims were barred on numerous grounds, if a ground for relief is precluded by any one of the PCRA's bars, it is not viable. We agree with the post-conviction court that all of Archuleta's additional claims are barred. We base our decision on the fact that he has already litigated ten of the twelve claims, and the two he has not raised could have been raised over a decade ago.

¶43 Relevant here, the PCRA bars a claim for relief if it "was raised or addressed at trial or on appeal" or in "any previous request for post-conviction relief." UTAH CODE § 78B-9-106(1)(b), (d). And a claim is barred if it "could have been, but was not, raised in a previous request for post-conviction relief." *Id.* § 78B-9-106(1)(d).

---

[5] The post-conviction court held that the evidentiary facts supporting each of Archuleta's additional claims were known to Archuleta by December 2012 at the latest, as that was when he filed his federal habeas corpus petition, which included all the additional claims he asserts here. Since Archuleta did not bring these claims or file his petition in state court until December 2014, the court held that each claim was barred by the PCRA's statute of limitations. *See* UTAH CODE § 78B-9-107(1) ("A petitioner is entitled to relief only if the petition is filed within one year after the cause of action has accrued."). Archuleta argues that the PCRA's time bar should not apply to him for a number of reasons, including that the statute of limitations is tolled due to Archuleta's alleged intellectual disabilities, and he received ineffective assistance of counsel during his initial post-conviction petition for relief. But we need not address these arguments, because we determine that Archuleta has already litigated almost all of the twelve additional claims, and the two he has not should have been raised many years ago. So we do not address the post-conviction court's dismissal of Archuleta's claims on this basis.

*A. Claims Archuleta Has Previously Raised*

¶44 Archuleta asserts that he added these claims to his petition in order to exhaust them in state court. But the post-conviction court found he had already raised most of them in prior proceedings, and they were therefore barred under Utah Code subsections 78B-9-106(1)(b) and (d).[6]

¶45 In his briefing to us, Archuleta has not addressed on a claim-by-claim basis the post-conviction court's determination that he had raised the claim before. In other words, he has not addressed the details of the dismissed claims with particularity and attempted to show how the ground for relief he asserts now is distinct from the past claim to which the court connected it.

¶46 Instead, he argues generally that although prior post-conviction counsel "may have raised some semblance of a claim" before, his current claims are "fundamentally different" because prior counsel did not adequately develop them and he will do so now. He cites federal appellate case law for the proposition that new factual development can "fundamentally alter" a claim." (Citing *Dickens v. Ryan*, 740 F.3d 1302, 1317 (9th Cir. 2014) (en banc); *Aiken v. Spalding*, 841 F.2d 881, 883, 884 n.3 (9th Cir. 1988).)

¶47 The primary problem with this argument is that Archuleta does not identify in his briefing any new facts on which his claims are based, nor does he tell us how these facts render his claims "fundamentally altered" or make them cognizable as "newly discovered material evidence." *See* UTAH CODE § 78B-9-104(1)(e). Further, we have rejected the argument that the PCRA permits a petitioner to relitigate a claim based on the assertion that prior counsel presented it ineffectively. *See Kell v. State*, 2008 UT 62, ¶¶ 16–17, 194 P.3d 913. Accordingly, this argument does

---

[6] On this basis, the court granted summary judgment on claims 2(a)–(c), 2(e)–(h), 3, 4, 5, 6, 7, 8, 10, and 11. We agree with the post-conviction court's determination on these claims. Additionally, our own review shows he has previously raised certain claims that the post-conviction court did not dismiss on this basis. "It is within our discretion 'to affirm [a] judgment on an alternative ground if it is apparent in the record.'" *Cochegrus v. Herriman City*, 2020 UT 14, ¶ 36, 462 P.3d 357 (alteration in original) (citation omitted).

not surmount the procedural bar prohibiting repetition of old claims. UTAH CODE § 78B-9-106(1)(b), (d).

¶48 We also note that Archuleta raises some of these claims from a slightly different angle. This does not matter when the current ground for relief is "essentially the same issue" raised previously. *See Gardner v. Holden*, 888 P.2d 608, 616 (Utah 1994). "The attempt to avoid a prior ruling by a hair-splitting distinction in the statement of the issue" does not permit a substantially similar claim to be relitigated. *Id.*

¶49 Accordingly, we conclude that Archuleta has not met his burden to persuade us that the post-conviction court erred when it found he had previously raised these claims. Nevertheless, we address each claim individually and explain why we agree that the following claims are procedurally barred because Archuleta has already raised them in prior litigation.

1. Claims 2 and 3: Ineffective Assistance of Trial Counsel

¶50 Archuleta argues that, for numerous reasons, his trial counsel rendered ineffective assistance. Claim 2 contains lettered subparts identifying alleged instances of ineffective assistance. And Claim 3 is a stand-alone claim alleging that trial counsel failed to investigate or present available mitigation evidence at sentencing.[7]

---

[7] Archuleta does not articulate in his opening brief the specific instances of alleged ineffective assistance contained in his petition. For purposes of documenting our comparison of his current grounds with his past claims, we summarize the allegations in his current petition here. Archuleta alleges that his trial counsel was ineffective in: (2a) failing to investigate and present evidence to impeach the testimony of David Homer; (2b and 2c) failing to investigate co-defendant Lance Wood and obtain Department of Corrections records showing Wood's culpability; (2d) failing to investigate and present blood spatter evidence; (2e) failing to object to supplemental jury instructions regarding application of the phrase "in the commission"; (2f) failing to object to the State's use of evidence of the uncharged crime of sodomy; (2g) failing to object to the guilt-phase special verdict form in the penalty phase, resulting in the double-counting of the aggravating circumstances; (2h) failing to challenge the "especially heinous" aggravating factor for failing to narrow the class of those eligible for the death

(continued . . .)

¶51 Archuleta clarifies that Claim 2 should be viewed as one comprehensive claim, and he intends the lettered subparts to be exemplary only. He does not delineate the individual examples of ineffective assistance in his opening brief to this court, and he argues that his overarching claim does not rely on the viability of any of the specific instances he alleged in his petition. Accordingly, with regard to Claim 2, Archuleta suggests it should not matter if he has raised particular instances of ineffectiveness before, because this is a comprehensive claim that trial counsel was ineffective, and it is not dependent on any of the specific examples he offers.

¶52 Archuleta has offered no legal analysis as to how he could prevail on Claim 2 without identifying at least one viable instance of trial counsel's performance that fell below an objective standard of reasonableness in a way that prejudiced him. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). In the absence of such argument or analysis, Archuleta has not explained how Claim 2 could stand when every instance of ineffectiveness he identifies has already been litigated. As described below, Archuleta previously asserted substantially similar, sometimes verbatim, claims of trial counsel's ineffectiveness on direct appeal and in his prior petitions for post-conviction relief.

¶53 In 1993, Archuleta raised the substance of two of his current claims on direct appeal. He argues in Claim (2f) that trial counsel was ineffective in failing to object to the State's misuse of evidence of the uncharged crime of sodomy. But Archuleta's trial counsel objected to the admission of evidence of sodomy in a motion *in limine*. *See Archuleta I,* 850 P.2d 1232, 1237 (Utah 1993) ("Defendant raises numerous claims on appeal. The most significant are that the trial court committed reversible error by . . . denying defendant's motion in limine to exclude evidence of sodomy."). On direct appeal, Archuleta's appellate counsel raised this issue again, arguing that the trial court committed reversible error in admitting the evidence because it was unduly prejudicial under Utah Rule of Evidence 403. *See id.* at 1241. And this court

penalty; (2i) failing to challenge the constitutionality of Utah's death-penalty statute for imposing a burden on the defendant to overcome the evidence of conviction and creating a presumption of death in sentencing; and (3) failing to investigate and present mitigation evidence.

rejected the argument, holding that it was not an abuse of discretion for the trial court to admit the sodomy evidence. *Id.* at 1242.[8]

¶54  In Claim (2e), Archuleta asserts that trial counsel failed to properly object to the supplemental jury instructions regarding application of the phrase "in the commission of" to the aggravating circumstance of object rape. But Archuleta also raised this ground for relief in his direct appeal. *Id.* at 1245. During deliberations, the jury asked questions that suggested it "was having difficulty determining whether the homicide was committed 'while in the commission of' object rape." *Id.* The district court gave a supplemental instruction, which Archuleta challenged on appeal as legally insufficient. *Id.* Although trial counsel had not objected to the supplemental instruction at trial, we reviewed the claim on the merits under a "manifest and prejudicial error standard." *Id.* at 1246. We determined that the supplemental instruction was plain error. *Id.* And consequently, we held that the jury's finding of the aggravating circumstance of object rape was invalid. *Id.* However, we did not overturn the jury's guilty verdict because the jury also "specifically and unanimously" found that the murder was committed in connection with three other aggravators. *Id.* Because only one aggravator was necessary, we concluded the error was harmless. *Id.* Further, we analyzed the error's impact on Archuleta's sentencing and found the error was harmless in that context as well. *Id.* at 1248. We stated, "we can confidently say beyond a reasonable doubt that even if the jury had not considered the invalid aggravator, it would have returned a verdict of death." *Id.*

¶55  Although the underlying ground for relief is the same, Archuleta puts a slightly different spin on Claim (2e). He asserts that trial counsel was ineffective for failing to object to this supplemental instruction and another instruction the district court gave after the jury asked an additional question on this topic.

¶56  But as described above, twenty-seven years ago this court resolved any claim related to the object-rape aggravator by completely invalidating it and determining that its absence did not harm Archuleta's conviction or sentence. Archuleta's attempt

_____

[8] As discussed below, Archuleta raised this issue again in his 2002 Petition. And on appeal, we again found that it was barred. *Archuleta III*, 2011 UT 73, ¶ 34 n.4, 267 P.3d 232.

to approach the same claim from a different angle does not change that.

¶57 One year later in his 1994 Petition, he raised numerous claims of counsel's ineffectiveness, some of which were precursors to his current claims.[9] The post-conviction court dismissed Archuleta's ineffective assistance claims because it concluded they could have been raised on direct appeal. *Archuleta II*, 960 P.2d 399, 399 (Utah 1998). We held that this was error and reversed and remanded Archuleta's ineffective assistance claims for further proceedings. *Id.*

¶58 On remand, Archuleta expanded on the ineffective assistance claims he had previously asserted. In his 2002 Petition, he substantially raised every one of the instances of conduct he relies on now in Claims 2 and 3.[10] The post-conviction court

---

[9] For example, in Archuleta's 1994 Petition, he alleged (numbered to match Archuleta's current petition): (3) "Counsel failed to investigate or present available evidence in mitigation . . . ."

[10] Archuleta raised substantially similar claims in his 2002 Petition as follows (numbered to match Archuleta's current petition): (2a) "Trial counsel failed to contact and interview David Homer regarding his prospective testimony," the meaning of the phrase "ultimate rush," and his "intent to lie in his testimony"; (2b and 2c) "Trial counsel failed to discover that co-defendant Lance Wood had been raped prior to the homicide of Gordon Church while in custody" and "failed to follow up on information he received that Lance Wood had taken responsibility for most of the acts resulting in the death of Gordon Church"; (2d) "Trial counsel failed to conduct a thorough, independent investigation of the facts of the crime"; "Trial counsel failed to request funds from the court or Millard County to retain forensic experts . . . ."; (2e) "Trial counsel failed to object to the court's inadequate response to the third question from deliberating jurors," which related to the phrase "in the commission of"; (2f) "The prejudicial effect of the sodomy evidence substantially outweighed its probative value" and "this evidence could only inflame and alienate jurors"; (2g) "Trial counsel failed to object to the impermissible multiple counting of aggravating circumstances" and "failed to submit a proper instruction on the burden of proof as to the existence of aggravating circumstances other than those

(continued . . .)

16

conducted a hearing on some claims, and ultimately ruled against Archuleta on all of them. We affirmed the court's ruling in *Archuleta III*, 2011 UT 73, ¶¶ 35–145, 267 P.3d 232 ("We . . . affirm the habeas court's rejection of Archuleta's claim that trial counsel rendered ineffective assistance of counsel . . . .").

### 2. Claim 4: Ineffective Assistance of Appellate and Post-Conviction Counsel

¶59 Archuleta claims that his appellate counsel was ineffective for failing to raise and preserve claims related to the "death-qualification" of the jury and the testimony of David Homer. He also alleges that his post-conviction counsel was ineffective for failing to raise the nine claims that a subsequent post-conviction counsel raised in the 2009 rule 60(b) motion.

¶60 Archuleta raised the first ground for relief in his 1994 Petition, in which he asserted that he "received ineffective assistance on appeal," and that "[t]he death-qualification of [his] jury" was unconstitutional. The post-conviction court ruled against Archuleta. We reversed and remanded the post-conviction court's dismissal of Archuleta's ineffective assistance claims. *Archuleta II*, 960 P.2d at 399.

¶61 On remand in his 2002 Petition, Archuleta expanded upon the first ground and raised the second ground he asserts now. He argued that the death-qualification of the jury violated numerous provisions of the Utah and United States constitutions. He alleged that his trial counsel "failed to file a pretrial motion objecting to the process of death-qualifying jurors, or to present an adequate record on the effect of this procedure." And he claimed his appellate counsel was ineffective in not raising this claim. He also argued that (1) his trial counsel was ineffective in failing to

---

found in the guilt phase"; (2h) "Trial counsel failed to object and argue to the trial court that the Utah Death Penalty Scheme . . . does not narrow the class of persons eligible for the death penalty . . . in violation of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution and Article I, Sections 7 and 9 of the Utah Constitution"; (2i) "Utah's death penalty scheme is unconstitutional on its face and as applied . . . because it creates a presumption that death is the appropriate penalty . . . ."; and (3) "Trial counsel failed to fully investigate, obtain and present mitigation evidence . . . ."

adequately investigate David Homer and challenge Homer's testimony, (2) Homer's testimony was unreliable and unduly prejudicial, and (3) his appellate counsel was ineffective for not raising these arguments. We addressed these claims in *Archuleta III*, 2011 UT 73, ¶¶26–34, 149–51.

¶62 The third ground included in Claim 4 is that Archuleta's post-conviction counsel was ineffective for failing to make numerous arguments that a subsequent post-conviction counsel raised in the 2009 rule 60(b) motion. But this is the very argument that subsequent post-conviction counsel made—first in the rule 60(b) motion and then to this court on appeal of the denial of that motion. *See id.* ¶ 149 ("In advancing this [rule 60(b)(6)] claim, Archuleta asserts nine counts of ineffective assistance of post-conviction counsel.").

¶63 We addressed this argument in 2011. We explained that rule 60(b)(6) relief should be "sparingly invoked and used only in unusual and exceptional circumstances." *Id.* ¶ 153 (quoting *Menzies v. Galetka*, 2006 UT 81, ¶ 71, 150 P.3d 480). But we acknowledged that attorney negligence can constitute an unusual and exceptional circumstance when the attorney "willfully disregards a client's interests" or "acts in a grossly negligent fashion." *Id.* (quoting *Menzies*, 2006 UT 81, ¶ 77). Accordingly, we stated that "a district court may set aside a judgment under such a scenario pursuant to rule 60(b)(6)'s catch-all provision." *Id.* We determined, however, that Archuleta's allegations of post-conviction counsel's deficiency did not justify rule 60(b)(6) relief. *Id.* ¶¶ 167–69. And we noted that "in cases like this one where counsel diligently sought to serve his client's interests, rule 60(b)(6) cannot be used to provide a habeas petitioner repeated bites at the proverbial post-conviction apple." *Id.* ¶ 168.

3. Claim 5: Disproportionate Sentence

¶64 Archuleta alleges that his sentence is disproportionate to the sentence of his codefendant and other capital cases in Utah. We ruled on this issue twenty-seven years ago in *Archuleta I*, 850 P.2d at 1248–49. There, we considered Archuleta's direct appeal from his conviction for murder and sentence of the death penalty. One of Archuleta's arguments on appeal was that "his sentence [was] disproportionate when compared to his co-defendant's and with other capital cases in Utah." *Id.* at 1249.

### 4. Claim 6: The District Court Erred in Failing to Grant a Mistrial

¶65 In this claim, Archuleta argues that the district court improperly refused to grant a mistrial based on the prosecution's presentation of false testimony. This relates to a witness who provided previously undisclosed testimony that she saw Archuleta shortly before the offense "wearing a knife in a scabbard strapped to his right hip." *Id.* at 1242. The district court did not grant a mistrial but gave a curative instruction. *Id.*

¶66 Archuleta raised this argument on direct appeal. *Id.* He specifically "attack[ed] the prosecution's failure to disclose the evidence and also claim[ed] that the State knowingly presented false testimony at trial." *Id.*

¶67 And this court ruled on Archuleta's arguments. We held that the State had violated its discovery duty, but we concluded that the "scabbard testimony" was not "so prejudicial as to undermine [the court's] confidence in the verdict" and that "there [was] no substantial likelihood that the outcome would have been different absent its admission." *Id.* at 1244 (footnote omitted).

### 5. Claim 7: The District Court Erred in Admitting Evidence of Sodomy

¶68 Archuleta contends that the district court improperly admitted evidence of the uncharged offense of sodomy in violation of his constitutional rights. Archuleta raised this issue on direct appeal. *Id.* at 1237, 1241–42. We found "no abuse of discretion" and affirmed the trial court. *Id.* at 1242.

¶69 Archuleta raised the issue again in his 2002 Petition. The post-conviction court ruled that the claim was barred because it had already been litigated, and we held that "this ruling of the habeas court was correct." *Archuleta III*, 2011 UT 73, ¶ 34 n.4.

### 6. Claim 8: Utah's Death Penalty Scheme is Unconstitutional

¶70 Archuleta claims that Utah's statutory death-penalty scheme is unconstitutional because it: (a) does not require sentencing juries to make written findings; (b) imposes a burden on the defendant to overcome the evidence of conviction and creates a presumption of death in sentencing; (c) fails to narrow the class of persons eligible for the death sentence; and (d) includes the "especially heinous, atrocious, cruel, or exceptionally depraved manner" aggravator, which fails to narrow eligibility for the death penalty because it is vague and applies to "too broad of a range of offenses."

¶71 He raised this issue in his 1994 Petition.

¶72 In his 2002 Petition, Archuleta made all four of these challenges to the constitutionality of Utah's death penalty scheme. He claimed that Utah's statutory scheme is unconstitutional because: (a) in part, the verdict forms in his case did not require jurors to specify which aggravating circumstances they found; (b) it creates a presumption that death is the appropriate sentence; (c) it does not narrow the class of persons eligible for the death penalty;[11] and (d) the "especially heinous" aggravator is "vague and overbroad on its face" and fails to narrow death eligibility. In *Archuleta III*, we addressed each of these claims. 2011 UT 73 ¶¶ 26, 56–62, 67.

7. Claim 9: Prosecutorial Misconduct

¶73 Archuleta asserts that the prosecution in his case violated the United States Supreme Court's mandate in *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory and impeachment evidence because it withheld evidence regarding the testimony of an adverse witness, David Homer. Archuleta raised a similar ground for relief in his 2009 rule 60(b) motion. He argued that counsel was ineffective with respect to Homer's testimony because (1) Homer's testimony that Archuleta told him that killing the victim was the "ultimate high" "may have been the very testimony that distinguished [Archuleta] from Wood in receiving the death penalty," (2) the State "planted" Homer "for the purpose of interrogating [Archuleta] without the aid of counsel," (3) others' testimony about Homer would have supported Archuleta's defense that Wood committed the murder, and (4) the State's failure to disclose the meeting with Homer to Archuleta would amount to a *Brady* violation. The evidentiary facts underlying his current claim are virtually identical to those underlying his previous ineffective assistance of counsel claim,

---

[11] As described above, *supra* ¶¶ 59, 62, Archuleta also claimed in his 2002 Petition that his trial and appellate counsel were ineffective for not making this argument. In *Archuleta III*, we affirmed the post-conviction court's ruling that counsel's decision not to raise this argument was not unreasonable, "[n]oting the numerous cases from this court rejecting claims identical to Archuleta's." 2011 UT 73, ¶¶ 59–61.

which the post-conviction court rejected and this court affirmed in *Archuleta III*. *See* 2011 UT 73, ¶¶ 149–51.

¶74 And in addition to articulating this as an instance of ineffectiveness, Archuleta asserted this ground as a stand-alone *Brady* violation. He argued before this court that "the State 'planted' David Homer in [his] cell for the purpose of interrogating him without the aid of counsel. This act violated [his] right to a Miranda warning and justifies suppressing David Homer's testimony." And he asserted that "the State's failure to disclose the meetings with David Homer . . . amount to a Brady violation."

### 8. Claim 10: Inadequate Record for Appellate Review

¶75 Archuleta claims the record is inadequate for meaningful and effective review. He raised this ground for relief in his 2002 Petition. And we addressed this claim in *Archuleta III*. *Id.* ¶ 26 (explaining that one of "Archuleta's substantive claims" was that the "trial court failed to ensure a complete appellate record").

### 9. Claim 11: Cumulative Error

¶76 Archuleta contends that the cumulative effect of these errors violated his right to due process and a fair trial. Archuleta made the same argument in his 2002 Petition. We rejected his argument then, because he had "failed to establish any errors of counsel that prejudiced his right to a fair trial." *Id.* ¶ 146 (citation omitted). Because Archuleta raises essentially the same claims now, this argument is procedurally barred. *See* UTAH CODE § 78B-9-106(1)(d). And because we have not found any of his claims to be viable, "the doctrine of cumulative error does not apply." *Archuleta III*, 2011 UT 73, ¶ 146 (citation omitted).

*B. Claims that Archuleta Could Have Raised Years Ago*

¶77 We now address the two remaining claims that Archuleta has not already raised but could have raised many years ago.

### 1. Claim 12: Cruel and Unusual Punishment

¶78 Archuleta also argues that it would violate his right to be free from cruel and unusual punishment if we were to allow the state to execute him after he has spent twenty-five years on death row. Such an assertion is commonly referred to as a *Lackey* claim. *See Lackey v. Texas*, 514 U.S. 1045, 1045 (1995) (Stevens. J., mem.) (stating Justice Stevens' position with respect to the denial of certiorari). A "*Lackey* claim" is a "prisoner's assertion that incarceration on death row for a protracted period is cruel and

unusual punishment." Lackey *Claim*, BLACK'S LAW DICTIONARY (11th ed. 2019). We have denied such claims in two separate cases. *See State v. Lafferty*, 2001 UT 19, ¶¶ 135–39, 20 P.3d 342; *State v. Andrews*, 843 P.2d 1027, 1030–31 (Utah 1992).

¶79 While we have never found a *Lackey* claim to be viable or addressed the parameters of such a claim, we have stated that "[f]or *Lackey* claims not to undermine the death penalty altogether, it is crucial that such claims fully ripen at some point prior to the last day before execution." *Gardner v. State*, 2010 UT 46, ¶ 85, 234 P.3d 1115. Such a claim is not immune from the PCRA's procedural and time bars.

¶80 Archuleta raised this claim twenty-five years after his sentencing. Yet he does not sufficiently analyze how it is not procedurally barred by explaining why he could not have raised it in a prior post-conviction petition. *See* UTAH CODE § 78B-9-106(1)(d). And he does not adequately analyze how this claim is not time barred by showing that he was unaware of the facts on which he bases his claim—such as the "nature of his incarceration," *Gardner*, 2010 UT 46, ¶ 89, and the attendant harms he invokes—for longer than a year prior to his filing of this petition. *See* UTAH CODE § 78B-9-107(1), 2(e); *see also Gardner*, 2010 UT 46, ¶ 89. Because Archuleta has not adequately addressed why this claim, raised for the first time twenty-five years after his sentencing, is not procedurally barred and time barred, we conclude that he has not met his burden of persuasion.

2. Claim 13: The Death Penalty is Unconstitutional

¶81 Finally, Archuleta challenges the constitutionality of the death penalty generally. He asserts that imposition of the death penalty is categorically cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

¶82 Archuleta does not give an explanation as to how this claim is not barred or why he could not have raised it previously. In his memorandum in support of his petition, he acknowledges that his argument is at odds with United States Supreme Court precedent. *See Gregg v. Georgia*, 428 U.S. 153, 187 (1976). But he asserts in his memorandum in support (but not in his briefing to us) that "[e]mpirical evidence has emerged over the last thirty-six years that has eroded the[] . . . justifications for the death penalty." In support, he cites a 2005 law review article. *See* Carol S. Steiker, *No, Capital Punishment Is Not Morally Required: Deterrence, Deontology, and the Death Penalty*, 58 STAN. L. REV. 751 (2005).

¶83 Beyond that, he does not explain what new evidence or information he became aware of, and when he became aware of it, to show (1) that this claim accrued no earlier than the year before he filed his current petition, *see* UTAH CODE § 78B-9-107(1), (2)(e); and (2) why he could not have raised this claim in a previous request for post-conviction relief, *id.* § 78B-9-106(1)(d).

¶84 The post-conviction court noted that if the 2005 law review article is the source of the evidence for his claim, he could have brought this claim within a year of the publication of the article. Archuleta argues that this is "illogical" and that "knowing of a piece of scholarship is not the start point for any limitations period." But he does not tell us what *is* the starting point for this claim and how it excuses the PCRA's procedural and time bars.

¶85 Accordingly, we agree with the post-conviction court that this claim is procedurally barred, because Archuleta has not given any reason as to why he was unable to make this legal argument during a prior post-conviction proceeding.

## CONCLUSION

¶86 We conclude that no provision of the PCRA applies to Archuleta's *Atkins* claim. Thus, the PCRA does not provide an avenue of relief for Archuleta's *Atkins* claim and its procedural bars do not apply. With respect to his twelve additional claims, we determine they are each procedurally barred under the PCRA.

¶87 Accordingly, we affirm the post-conviction court's dismissal of Archuleta's *Atkins* claim, not because it is barred by the PCRA but because it is not cognizable under that statute. And we affirm the post-conviction court's grant of summary judgment against his remaining claims.